DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, David Hutzler, has appealed from his convictions of aggravated murder, aggravated robbery, and aggravated burglary, each with firearm specifications. This Court affirms.
 I {¶ 2} At approximately 5:00 a.m. on April 5, 2000, a 911 dispatcher received a call from 260 Oakdale Avenue in Akron, Ohio. The dispatcher heard no response when she answered and the call was quickly disconnected. The dispatcher called back the number and, although the call was answered, the dispatcher heard only an indistinguishable scuffle before the call was again disconnected. Akron Police officers were dispatched to the scene. When the officers arrived, they found the side door to the entryway pried open, blood spots on the floor of the entryway and, in the upstairs apartment, they found only Danielle Maximovich, who had been shot repeatedly and was lying unconscious on the living room floor. Maximovich was later pronounced dead at the scene.
 {¶ 3} The evidence at the scene included the phones that had apparently been used to place and receive the 911 calls, 9 mm shell casings, and several blood spots found in the entryway downstairs from Maximovich's apartment. The evidence suggested that Maximovich had made the 911 call from a phone attached to the wall, that the killer had ripped the cord out of the wall, disconnecting the call, and when the dispatcher called back, Maximovich was able to answer a cordless handset, but the killer must have taken the handset from her and again disconnected the call.
 {¶ 4} There were apparently no witnesses to the murder other than the murderer and the deceased victim. A young neighbor of the victim, however, was awakened by the commotion, looked out her window after the shots were fired, and saw a man with a gun standing outside the victim's building. She described the man as a black man in his early thirties, approximately five foot eleven and one hundred seventy to one hundred seventy-five pounds.
 {¶ 5} The police initially found no evidence of drug activity at the scene, but their investigation revealed that Maximovich had been selling cocaine from her apartment on a regular basis and that cocaine and cash had been stolen from the apartment that night. Although the police had several suspects at one time, each was eventually ruled out except Hutzler. Although Hutzler was the same approximate size as the description given by the eyewitness, he did not completely match the eyewitnesses description because he was a white male. The police had DNA evidence linking Hutzler to the murder, however, and they considered the DNA evidence to be more reliable than the eyewitness identification.
 {¶ 6} The evidence linking Hutzler to the murder included his fingerprint on the handset of the cordless phone, his wet blood found in the entryway and phone records indicating that Hutzler had made twenty-seven calls to the victim's apartment during the hours surrounding the murder; the calls ceased at approximately 3:46 a.m, and one more call was made after the murder at approximately 6:12 a.m. Hutzler explained to police that he had been to the apartment to purchase drugs from the victim at approximately 9:00 p.m. on April 4 but claimed he had not seen her since that time. According to the police, the blood found in the entryway was bright red and still wet when they arrived at the scene. Experts further indicated that if the blood had been there since 9:00 p.m., the blood would have dried and become a rust-like color.
 {¶ 7} Hutzler was indicted on charges of aggravated murder, aggravated robbery, and aggravated burglary, each with firearm specifications. Following a jury trial, Hutzler was convicted of all charges. Hutzler has timely appealed, raising nine assignments of error. This Court has consolidated some of the assigned errors to facilitate review.
 II Assignment of Error Number One
"The trial court erred in allowing admission of the composite drawing of the suspect in the case, over the objection. this admission was unduly prejudicial to appellant during the course of his trial and denied appellant his rights as offered under the 4th, 5th, 6th, and14th amendments to the united states constitution."
 {¶ 8} Hutzler has contended that the trial court erred in admitting a composite drawing of the suspect because (1) the state failed to lay a proper foundation for admission of the exhibit by explaining how the composite was prepared or by authenticating it and (2) the probative value of the composite was outweighed by the danger of unfair prejudice.
 {¶ 9} Evid. R. 103(A)(1) provides that error may not be predicated on a ruling that admits evidence unless a substantial right is affected and "a timely objection * * * appears of record stating the specific ground of the objection[.]" At the time the trial court ruled that this exhibit was admissible, the only objection raised by Hutzler was that the composite was not relevant because the eyewitness, D.B., was unable to identify the composite at trial as the one that the police had prepared two years earlier based on her description. The state's response to the objection was that another witness, a police officer who was present at the time the composite was reviewed by D.B., testified that D.B. had reviewed the composite at the time it was prepared and indicated that it did look like the man she saw at the victim's apartment except that man had a darker complexion. There was no further discussion on the issue and the trial court admitted the exhibit.
 {¶ 10} Although Hutzler raised an objection to the admissibly of this exhibit at trial, it was not on the same grounds he now raises on appeal. This Court "need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." State v. Williams (1977),51 Ohio St.2d 112, paragraph one of the syllabus, vacated in part on other gorunds (1978), 438 U.S. 911, 57 L.Ed.2d 1156. Because Hutzler failed to preserve these issues for appellate review, his first assignment of error is overruled.
 Assignment of Error Number Two
"Appellant's right to due process of law as guaranteed by the 4th,5th, 6th, and 14th amendments to the U.S. Constitution as well as article 1 § 10 of the Ohio Constitution were effectively denied by his ineffective representation."
 {¶ 11} Hutzler has asserted that his trial attorneys were ineffective because of several errors that they made at trial. Specifically, he has argued that trial counsel committed errors during voir dire and in their trial strategy regarding the eyewitness and her testimony and the testimony of other witnesses and the admission of particular exhibits.
 {¶ 12} Reversal of convictions based on ineffective assistance of counsel requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.Strickland v. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674; Statev. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus.
 {¶ 13} Although Hutzler has set forth an argument to support his contentions, he has failed to cite any legal authority to demonstrate that trial counsel even erred, much less caused him prejudice so as to deprive him of a fair trial. "An appellate court may disregard an assignment of error pursuant to App.R. 12(A)(2) if an appellant fails to cite to any legal authority in support of an argument as required by App.R. 16(A)(7)." State v. Martin (July 12, 1999), 12th Dist. No. CA99-01-003, citing Meerhoff v. Huntington Mtge. Co. (1995),103 Ohio App.3d 164, 169. Furthermore, Loc.R. 7(A)(7) provides, in part, that "[t]he argument shall contain the contentions of the appellant with respect to the assignments of error and the supporting reasons with citations to the authorities and statutes on which the appellant relies." "If an argument exists that can support this assignment of error, it is not this court's duty to root it out." Cardone v. Cardone (May 6, 1998), 9th Dist. Nos. 18349 and 18673, at 18. Because Hutzler has failed to cite legal authority to support his arguments, and this Court will not make his arguments for him, his second assignment of error is overruled.
 Assignment of Error Number Three
"The trial court erred in denying appellant's motion to suppress the blood draw as well as for his oral statements made without the benefit of counsel, in violation of his due process rights as guaranteed by the4th, 5th, 6th and 14th amendments to the U.S. Constitution; as well, article 1, § 10 of the Ohio constitution."
 {¶ 14} Hutzler has asserted that the trial court erred in denying his pretrial motion to suppress evidence. Hutzler had moved to suppress several items of evidence but has limited his argument on appeal to the following: (1) a blood sample taken from him pursuant to a warrant, (2) a statement he made to police on April 8, 2000, and (3) a statement he made to police on May 2, 2000. Through his motion to suppress, Hutzler had argued that the warrant for the blood sample was not supported by probable cause and that the statements had been improperly elicited in violation of his rights under Miranda v. Arizona (1966), 384 U.S. 436,444, 16 L.Ed.2d 694.
"In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. (Illinois v.Gates [1983], 462 U.S. 213, followed.)" State v. George (1989),45 Ohio St.3d 325, paragraph two of the syllabus.
 {¶ 15} Hutzler makes only a bald argument that the affidavit for the search warrant was not supported by probable cause but does not point to any specific deficiency. Once again, it is the appellant's duty to demonstrate error on appeal and this Court is not inclined to make his argument for him. See Cardone, supra.
 {¶ 16} Next, Hutzler sought to suppress statements that he made during questioning by police on two separate occasions prior to his arrest. Hutzler asserted that both statements were obtained in violation of his Miranda rights because he had not been read his rights prior to interrogation.
 {¶ 17} A suspect is entitled to Miranda warnings only when there is a restraint on his freedom of movement of the degree associated with a formal arrest. California v. Beheler (1983), 463 U.S. 1121, 1125,77 L.Ed.2d 1275. A determination of whether a particular individual was "in custody" during police questioning and, therefore, whether Miranda
applies, does not depend upon the subjective analysis of either the questioner or the person being questioned. Berkemer v. McCarty (1984),468 U.S. 420, 442, 82 L.Ed.2d 317, 336. The test used to judge whether an individual has been placed into custody is "whether, under the totality of the circumstances, `a reasonable person would have believed that he was not free to leave.'" State v. Gumm (1995), 73 Ohio St.3d 413, 429, quoting United States v. Mendenhall (1980), 446 U.S. 544, 554,64 L.Ed.2d 497.
 {¶ 18} The trial court found that none of the statements at issue was made during custodial interrogation and that, therefore, Hutzler had not been entitled to Miranda warnings. Hutzler has asserted that the interrogations at issue did constitute custodial interrogation because the questioning was conducted by police officers at the police station and, by the time of the second interrogation, the police were focusing on Hutzler as a murder suspect. These facts alone, however, were not sufficient to create a custodial interrogation atmosphere.
"Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question.Nor is the requirement of warnings to be imposed simply because thequestioning takes place in the station house, or because the questionedperson is one whom the police suspect. Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him `in custody.' It was that sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited." (Emphasis added.) Oregon v. Mathiason (1977), 429 U.S. 492,495, 50 L.Ed.2d 714.
 {¶ 19} Because Hutzler has failed to demonstrate that the trial court erred in denying his motion to suppress, his third assignment of error is overruled.
 Assignment of Error Number Four
"The trial court erred in admitting state's exhibit 60, thereby denying appellant his right to due process and fair trial as guaranteed by the4th, 5th, 6th, and 14th amendments to the united states constitution as well as article 1, section 10 of the ohio constitution."
 Assignment of Error Number Five
"The trial court erred in overruling appellant counsel's objection to the offer and admission of autopsy photographs (exhibit 39). These photographs were duplicative, repetitive, and highly prejudicial to appellant and violate ohio evidentiary rule 403."
 {¶ 20} These two assignments of error will be addressed together because they are related. Hutzler has asserted that the trial court erred in admitting two particular exhibits, an autopsy photograph and a photograph of him taken at the police station. According to Hutzler, the autopsy photograph was repetitive because there was another photograph of the same wound admitted into evidence. He has argued that the photograph of him was prejudicial because it was a police mug shot. When the trial court addressed this same argument at trial, however, it noted that nothing in the photograph of Hutzler indicated that it was a police photograph.
 {¶ 21} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. Where a defendant has alleged error in the admission of evidence, the alleged error is not reversible unless the trial court "`clearly abused its discretion and the defendant has been materially prejudiced thereby[.]'" State v. Maurer
(1984), 15 Ohio St.3d 239, 265, quoting State v. Hymore (1967),9 Ohio St.2d 122, 128.
 {¶ 22} Hutzler has failed to explain, and this Court is unable to understand, how the admission of either one of these exhibits was prejudicial to Hutzler. These photographs did not link Hutzler to the killing, nor were they incriminating in any way. Consequently, Hutzler has failed to demonstrate that the admission of these photographs, even if improper, constituted prejudicial error. The fourth and fifth assignments of error are overruled.
 Assignment of Error Number Six
"The trial court erred in overruling appellant counsel's objection during the state's closing argument. The court erred in not striking said portion of the state's closing argument and in not instructing the jury to disregard a statement that was made in closing without expert testimony which was highly prejudicial to appellant in violation of his right to due process and fair trial, as guaranteed by the 4th, 5th, 6th, and14th amendments to the united states constitution, as well as Article 1, section 10 of the ohio state constitution."
 {¶ 23} Hutzler has argued that the trial court erred in failing to strike the following portion of the state's closing argument:
"And on the way out there's a swipe of the door, a swipe, that's exactly what she called it. It's a word of art for an investigator, it is a swipe, and in testing that swipe she determines that the blood of both Mr. Hutzler and the victim are contained in that swipe on the door."
 {¶ 24} A prosecutor's remarks constitute reversible error only if the remarks were improper and the remarks prejudicially affected an accused's substantial rights. State v. Smith (1984), 14 Ohio St.3d 13,14, citing Unitied States v. Dorr (C.A. 5, 1981), 636 F.2d 117, 120. The focus of the analysis "is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982), 455 U.S. 209, 219,71 L.Ed.2d 78.
 {¶ 25} Hutzler has asserted that the jury was misled by the prosecutor's use of the term "swipe" because the witness who conducted the DNA tests never used that specific term, nor was it substantiated by her testimony. A review of other witnesses' testimony, however, reveals that the testimony of the police officer who actually collected the blood samples used the term "smear or transfer" to describe the blood stain on the door and explained that a smear or transfer has usually "been wiped on there, like it was on something, hand smear, jacket, something put it there."
 {¶ 26} The word "swipe" is defined as "a strong sweeping * * * stroke." Webster's Third New International Dictionary (1993) 2313. The term "smear" is similarly defined as "material smeared on a surface." Id. at 2150. Either term could be used to describe the blood stain that appeared on the door because someone wiped the blood across it, as opposed to the blood dripping or splattering onto the door. Consequently, the prosecutor's use of the term "swipe" rather than "smear" did not serve to mislead the jury and did not prejudice Hutzler in any way. The sixth assignment of error is overruled.
 Assignment of Error Number Seven
"The trial court erred when it excused potential, as well as sitting, jurors who had knowledge of the appellant's father, thereby denying him his right to due process as guaranteed by article 1, section 10 of the ohio constitution."
 {¶ 27} Through his seventh assignment of error, Hutzler has asserted that the trial court erred in dismissing one juror from service and in not dismissing another. In his four-sentence argument, Hutzler again fails to cite any legal authority to support his position that the trial court committed reversible error. Consequently, this Court need not address the merits of his argument. See Meerhoff v. Huntington MortgageCo. (1995), 103 Ohio App.3d 164, 169; Loc.R. 7(A)(7). The seventh assignment of error is overruled accordingly.
 Assignment of Error Number Eight
"The trial court erred in overruling appellant's rule 29 motion for judgment of acquittal made at the close of the state's case. Sufficient evidence was not presented on each of the elements of the offenses such that the case could proceed to the jury which was in violation of appellant's right to due process and fair trial as guaranteed by the 4th, 5th, 6th, and 14th amendments to the united states constitution and, as well as article 1, section 10 of the ohio state constitution."
 Assignment of Error Number Nine
"After reviewing the presented evidence at trial and evaluating appellant's arguments on appeal, it is clear that appellant's [original] conviction went against the sufficiency and manifest weight of the presented evidence in violation of appellant's right to due process and fair trial as guaranteed by the 4th, 5th, 6th, and 14th amendments to the united states constitution, as well as article 1, section 10 of the ohio state constitution."
 {¶ 28} These assignments of error will be addressed together because they are closely related. Hutzler has contended that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.
 {¶ 29} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that, construing the evidence in a light most favorable to the prosecution, reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215, 216.
 {¶ 30} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 31} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
"Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4.
 {¶ 32} Aside from stating the sufficiency and manifest weight standards, Hutzler has made no specific argument as to why the state's evidence failed to support his convictions. In the interest of justice, however, this Court has thoroughly reviewed the evidence before the trial court and finds that Hutzler's convictions were not against the manifest weight of the evidence and, therefore, his convictions were supported by sufficient evidence.
 {¶ 33} The state's evidence against Hutzler focused in large part on the blood that was found on the floor of the entryway that was identified as Hutzler's. Hutzler had admitted to police that he had been to the victim's apartment to purchase and consume cocaine that night, but he insisted that he left the apartment at approximately 9:00 p.m. and did not return. Thus, the theory of Hutzler's defense was that the blood had been on the landing since 9:00 p.m. or earlier. The state's evidence was undisputed, however, that if Hutzler had not been to the scene since 9:00 p.m., the blood would have been dry by the time the police arrived after 5:00 a.m. Thus, it was crucial that the state establish that the blood found in the entryway was fresh.
 {¶ 34} Several of the state's witnesses described the blood that they found in the entryway as fresh. One witness described the blood as "very bright red, wet[.]" Another witness described the blood as "bright red" with a "shiny cast to it. To me it looked very fresh." That witness further explained that there was no doubt in his mind that the blood was fresh and that he had seen dried blood before and the blood found in the entryway did not resemble dried blood.
 {¶ 35} Another witness described the blood as "shiny, red" and "wet" and explained that had the blood been dry, it would have looked like rust. That witness, who arrived at the scene later than the other police officers because she came to collect evidence, explained that at the time she arrived, the blood drops had begun to dry around the edges but were still wet in the center. There was no evidence offered to contradict the state's evidence that Hutzler's blood found at the scene was fresh and that it could not have been there for very long.
 {¶ 36} The state also presented phone records to demonstrate that Hutzler had called the victim's apartment twenty-seven times during the hours surrounding the murder. Hutzler made numerous calls to the victim prior to 9:00 p.m., and then made numerous calls after 11:00 p.m., with most of the late calls between 2:00 a.m. and 3:46 a.m. No calls were made between 3:46 a.m. and 6:12 a.m., giving Hutzler time to go to the victim's apartment, commit the murder, then go home and make one more call.
 {¶ 37} The state's theory about the phone calls was that Hutzler called the victim before the drug deal and then repeatedly called her afterward because he was not satisfied with what he had purchased. An acquaintance of the victim testified that she went to the victim's apartment to purchase drugs a few hours before the murder and overheard the victim on the phone. She heard the victim say, "I don't have to meet you anywhere. * * * I got what I got and you got what you got." The victim then hung up the phone.
 {¶ 38} When Hutzler was interrogated by the police, he admitted that he had called the victim that night but explained that he had been making three-way calls on behalf of the victim's boyfriend who was in jail and could not make collect calls directly to the victim's apartment. According to Hutzler's statement, he made the last three-way call for the boyfriend at approximately 2:00 a.m. His explanation for the many calls near the time of the murder was contradicted by one of the state's witnesses, however. A representative of the sheriff's office testified that, although the victim's boyfriend was in the Summit County Jail that night, inmates have no access to phones late at night.
 {¶ 39} The evidence further established that Hutzler had been to the victim's apartment to purchase drugs on several other occasions and his business card was found on a bulletin board. Because Hutzler had admittedly been to the victim's apartment in the past, it is possible that his fingerprint on the cordless handset was not related to the murder. The state presented further evidence, however, that fingerprints are very fragile and do not tend to remain for long on items that are handled often; the victim did apparently use the cordless handset to answer the incoming 911 call during the attack and the murderer apparently took it from her to cut off the call, and no other fingerprints were found on the phone.
 {¶ 40} Hutzler's defense focused in large part on other potential suspects. Defense counsel placed much emphasis on the identification testimony of D.B., the eyewitness who had described the assailant as a black man, trying to point the blame at other potential suspects. The state's evidence demonstrated, however, that the police had considered many other suspects but that each had been ruled out over time. No fingerprints of the other suspects had been found at the scene, nor had any of their blood been found. One state's witness explained that the police typically place more emphasis on DNA evidence because it is more reliable than eyewitness identification.
 {¶ 41} As to the aggravated robbery and aggravated burglary convictions, the state's evidence demonstrated that the side door downstairs from the victim's apartment had been forced open by the assailant and that drugs and money had been taken from the victim's apartment. An acquaintance of the victim testified that she had been to the victim's apartment at approximately 2:00 or 2:30 a.m. on the morning of the murder and that the victim had drugs and money in a safe in the apartment. When the police arrived after the murder, they found that the side door had been forced open, the apartment had been ransacked, the victim had been shot multiple times, and the safe, drugs, and money were gone from the apartment.
 {¶ 42} Given the evidence before the trial court, this Court cannot say that the jury lost its way in convicting Hutzler of aggravated murder, aggravated robbery, and aggravated burglary, each with firearm specifications. Consequently, his convictions were not against the manifest weight of the evidence and were supported by sufficient evidence. The eighth and ninth assignments of error are overruled.
 III {¶ 43} Hutzler's assignments of error are overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
Slaby, P.J. and Batchelder, J. concur.