DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Carla V. ("Carla"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her two minor children and placed them in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.
 I. {¶ 2} Carla is the natural mother of several children, two of whom, S.V., born June 4, 1993, and D.V., born May 19, 1994, are at issue in this case.[1] The fathers of S.V. and D.V. have had little involvement in their lives and are not parties to this appeal. On January 2, 2003, S.V. and D.V. were removed from their home pursuant to Juv.R. 6 after police had made a drug arrest in the home and found 120 hypodermic needles, a gun and some ammunition under Carla's mattress. Carla was convicted of endangering children and was placed on probation after serving four days of a 180-day sentence. One condition of her probation was that she comply with the requirements of her case plan with CSB.
 {¶ 3} CSB's goals for Carla included that she refrain from using alcohol and illegal drugs and use prescription drugs only as directed; that she complete parenting classes so that she can develop the ability to provide appropriate supervision, structure, and discipline for her children; and that she resolve the pending criminal charges against her.
 {¶ 4} On October 21, 2003, CSB moved for permanent custody of both children. Following an evidentiary hearing, the trial court found that the children could not be placed with either parent within a reasonable time or should not be placed with either parent because Carla had failed to substantially remedy the conditions that caused the children to be placed outside the home and that permanent custody was in the best interests of S.V. and D.V. See R.C. 2151.414(E)(1) and 2151.414(B)(1)(a). Consequently, the trial court terminated Carla's parental rights and placed the children in the permanent custody of CSB.
 {¶ 5} Carla appeals and raises five assignments of error.
 II. ASSIGNMENT OF ERROR I
"The trial court erred in finding that the minor children should not be placed with appellant [Carla V.] within a reasonable amount of time and that it is in the minor children's best interest[s] that they be placed in the permanent custody of csb as this decision was not supported by clear and convincing evidence and was against the manifest weight of the evidence[.]"
 ASSIGNMENT OF ERROR II
"The trial court erred in granting CSB permanent custody as CSB failed to use reasonable and diligent efforts to reunite appellant [Carla V.] and the minor children[.]"
 {¶ 6} We will discuss these assignments of error together because Carla argued them jointly. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least twelve months of the prior twenty-two months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C.2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99. Carla challenges both prongs of the permanent custody test.
 {¶ 7} The trial court found that the first prong of the permanent custody test was satisfied pursuant to R.C.2151.414(E), which required the trial court to find, by clear and convincing evidence, "that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent" because:
"Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties." R.C. 2151.414(E)(1).
 {¶ 8} Under this prong of the permanent custody test, Carla first asserts that the agency did not establish, by clear and convincing evidence that she failed to substantially remedy the conditions that caused the children to be placed outside the home. She points to evidence that she attended counseling, completed parenting classes, and that all of her urine drug screens were negative except one.
 {¶ 9} Carla's argument completely ignores all that she failed to accomplish. For example, although it is true that Carla completed parenting classes, several witnesses, who observed visits between Carla and the children at various times throughout the case plan period, testified that Carla did not apply what she should have learned. Several of these witnesses testified that they observed no real improvement in Carla's parenting skills. Specifically, Carla did not supervise or discipline her children and she failed to provide the structure or boundaries that they needed. The children's psychologist testified that she observed eight visits and never saw Carla use appropriate parenting skills. She explained that the two boys had mental health and learning problems and, particularly due to those problems, they needed structure and predictability during visits and Carla did not provide that. When the psychologist offered suggestions, Carla did not want to listen.
 {¶ 10} Carla also asserts that, because she had only one positive drug screen, that CSB did not prove that she had failed to substantially remedy her drug problem. The record reveals, however, that during the twelve months prior to the permanent custody hearing, Carla submitted less than ten urine samples and they were confined to one month near the beginning and one month at the end of the case plan period. She had negative drug screens for approximately one month and then, on May 14, 2003, Carla had a positive drug screen. She told her caseworker at one point that the lab must have been a mistake and tested the wrong urine. She also attempted to justify the positive result by claiming that she was taking pain medication for a back injury, but by her own admission she did not go to a doctor for medication but got the drug from a friend.
 {¶ 11} After the one positive drug screen, Carla failed to submit any urine samples for drug screening for the next seven months, which was most of the case plan period. She offered no reason to her probation officer for her failure to comply with that requirement of her case plan. Carla told her caseworker that she did not have the time to submit the drug screens, despite the fact that the screening location was only a few blocks from where she lived.
 {¶ 12} Moreover, during the period that Carla did not submit any urine samples for drug screening, she was charged with two drug offenses stemming from a traffic stop in which police found Ritalin pills and a crack pipe in the vehicle. Although Carla told her caseworker that the pills and pipe were not hers, she apparently entered a plea of guilty to both offenses. There was also testimony at the hearing that the crack pipe was found in Carla's purse and that Carla had burns on her fingers.
 {¶ 13} Although Carla maintains that CSB did not provide her with reasonable and diligent efforts to remedy the conditions that led to the removal of her children, the evidence actually established that Carla failed to take advantage of the services that were available to her. It is true, as Carla argues, that there were some delays and gaps in services that were provided to her due to a CSB strike and work stoppage, but those problems were specifically recognized by CSB witnesses at the hearing and were not held against Carla.
 {¶ 14} From the point of CSB's initial involvement with this family, Carla has tended to minimize the significance of her family situation and has denied that there were any problems with her children or herself. Carla continued to deny that she had a drug problem, but for some reason she kept associating with other drug users. The caseworker testified that, during unannounced visits to Carla's home, there were often people there who appeared to be under the influence of drugs. As one witness noted, if Carla was determined to maintain sobriety and get her children back, she would stop associating with others who use drugs.
 {¶ 15} Regarding her lack of parenting skills, Carla has repeatedly resisted the suggestions of the caseworker, visitation aide, and the children's psychologist. They suggested to Carla again and again what she should or should not be doing during the visits with her children but she did not take their advice. She indicated at one point that no one was going to tell her what to do.
 {¶ 16} As Carla's caseworker explained at the hearing:
"[T]hroughout my involvement with [Carla], I have encouraged her in every way that I could think of to try to follow through with the things that [CSB] felt were necessary[.] * * * [She] has been very resistant to doing the things that have been requested of her [and] * * * continues to deny that there's really a problem[.] * * * I don't think that she's really aware of the seriousness of the situation and willing to follow through with those things."
 {¶ 17} There was ample evidence before the trial court to establish that CSB made diligent efforts to help Carla comply with the requirements of her case plan but that Carla failed to utilize the services available to her and failed to substantially remedy the conditions that led to the removal of her children from the home.
 {¶ 18} Carla also challenges the trial court's finding on the best interest prong of the permanent custody test. When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C.2151.414(D)(1)-(4).[2]
 {¶ 19} Carla's interaction with her children was limited primarily to supervised visitation throughout the case plan period. Carla's attendance at visits was consistent, but numerous witnesses testified that the visits tended to focus on the food and toys that Carla brought and there was not much meaningful communication between Carla and her sons. Witnesses also observed inappropriate communication during the visits such as Carla telling the boys that they would be coming home on a specific date, which was not true. For a period of time, the children had been communicating with Carla via telephone at the foster family's house. The phone calls were later stopped, however, because Carla was telling the boys that they would be coming home soon.
 {¶ 20} The children's psychologist, who observed eight visits, testified that the children do appear to have a bond with their mother, but "[i]t's based on attention-getting negative behaviors." During the visits, several different witnesses testified that Carla did not attempt to discipline the boys when they misbehaved and that she failed to supervise them and sometimes allowed the boys to wander away. The caseworker or visitation aide would sometimes intervene to discipline the children. The psychologist testified that at one visit, had the caseworker not stepped in to discipline D.V., he would have hurt himself.
 {¶ 21} The children have been placed with the same foster family since January 27, 2003. In that home, they have been provided with a structured environment where there are consequences (such as privileges taken away) when either boy behaves inappropriately. This structure has had a positive impact on the boys and they are beginning to understand that their behavior has consequences. The foster family has also made sure that S.V. and D.V. get the mental health help that they need by taking them to counseling sessions with a psychologist and psychiatrist regularly.
 {¶ 22} The guardian ad litem testified and submitted a report on behalf of the children. She explained that she interviewed the children more than a dozen times and also had ongoing contact with the foster parents, caseworkers, and Carla and observed eight or nine visits with Carla and the children. The guardian ad litem indicated that she believed that Carla loves her children and that they love her but that her substantial drug history has greatly impacted her ability to parent them. Pointing to the seven-month period of time that Carla did not submit urine samples for drug testing, the guardian testified that Carla has not demonstrated that she can remain sober for an extended period of time and that, consequently, returning the children to her would place them at risk of exposure to illegal drugs, criminal activity, and neglect.
 {¶ 23} The custodial history of the children was detailed only after they were removed from Carla's home in January of 2003. At that time, CSB had concerns that Carla was using drugs and that she lacked the ability to supervise her children. During the next twelve months, as explained above, Carla made little progress toward remedying her drug problem or improving her parenting skills. Carla continued to deny that her family had any problems. During this same period, the children were improving in foster care because they were getting the mental health help that they needed for a problem that Carla refused to recognize.
 {¶ 24} There was also evidence before the trial court that the children need a legally secure placement and such a placement cannot be achieved with Carla and there are no suitable relatives available. S.V. and D.V. have problems reading and, more significantly, each has severe behavior problems that potentially stem from bipolar disorder, although the diagnosis is not entirely clear at this time. Both children are in counseling with both a psychologist and a psychiatrist because they take medication. Their psychologist testified that lack of structure is very detrimental to these children. Each child has had to be hospitalized due to concerns that they would harm themselves or others. D.V., in particular has threatened to kill himself and others and has repeatedly abused himself by biting himself until he bled, banging his head on the table or floor, scratching his legs until they bled, and throwing himself down the stairs. Carla tends to deny that the boys have any problems, claiming at first that the school was exaggerating their problems, and then blaming the foster family as the source of the problems.
 {¶ 25} From this evidence, the trial court could reasonably conclude that permanent custody was in the best interests of S.V. and D.V. Because CSB proved both prongs of the permanent custody test by clear and convincing evidence, the trial court did not err in terminating Carla's parental rights and placing the children in the permanent custody of CSB. The first and second assignments of error are overruled.
 ASSIGNMENT OF ERROR III
"The trial court erred in denying appellant's motion for an in-camera interview with the minor children and motion for separate guardian ad litem for the minor children[.]"
 {¶ 26} Through her third assignment of error, Carla asserts that the trial court erred: (1) in failing to conduct an in camera interview of the children and (2) in failing to appoint a separate guardian ad litem for the children. We will address each argument in turn.
 {¶ 27} Although Carla requested that the trial court conduct an in camera interview of the children, the trial court was not required to do so.
"[A] juvenile court has the option of either having the child assert his or her opinion, through, for example, an in-camera interview or testimony, or the court may rely upon the guardian ad litem's representations with respect to the child's desires. Because the juvenile court has a choice, the decision not to conduct an in camera interview will be reversed only if the court abused its discretion in declining to do so." In re Funk,
Portage App. Nos. 2002-P-0035, 2002-P-0036, 2002-Ohio-4958, at ¶ 30
 {¶ 28} The trial court did appoint a guardian ad litem in this case who represented the desires of the children to the court. Moreover, the trial court had evidence before it that the children were afraid to come to court and express their desires because they were worried that their mother would find out and be angry with them. The children's psychologist testified that the children were "scared to death" that their mother would harm them if they did not say that they wanted to come home with her because they had seen her threaten other children with a gun. The psychologist further explained that the boys were very worried that they would have to make the decision about where they were going to live and they wanted someone else to make that decision. Given the situation before the trial court, it did not abuse its discretion in denying Carla's request for an in camera interview of the children.
 {¶ 29} Next, Carla argues that the trial court erred in not appointing a separate guardian ad litem for the children. Prior to the hearing, Carla moved for a separate guardian ad litem for the children, relying on R.C. 2151.281(H), which provides, in relevant part:
"If the guardian ad litem for an alleged or adjudicated abused, neglected, or dependent child is an attorney admitted to the practice of law in this state, the guardian ad litem also may serve as counsel to the ward. If a person is serving as guardian ad litem and counsel for a child and * * * the court finds that a conflict may exist between the person's roles as guardian ad litem and as counsel, the court shall relieve the person of duties as guardian ad litem and appoint someone else as guardian ad litem for the child. * * *."
 {¶ 30} Although the guardian ad litem in this case was an Ohio attorney, Carla points to no evidence in the record to demonstrate that the guardian ad litem was serving in the dual capacity of guardian ad litem and attorney for the children. Moreover, even if she had been serving that dual role, Carla points to no evidence or argument that there was any conflict between those two roles. Therefore, Carla has failed to demonstrate that the trial court erred in failing to appoint a separate guardian ad litem. The third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV
"The trial court erred in denying appellant's motion for dismissal based on failure to establish venue[.]"
 {¶ 31} Through her fourth assignment of error, Carla asserts that the trial court should have dismissed the case because the agency failed to establish venue. In support of this argument, Carla cites only a criminal case, State v. Headley (1983),6 Ohio St.3d 475, in which the Ohio Supreme Court held that venue is not a material element of any crime but is a fact that must be proven beyond a reasonable doubt. Id. at 477. Carla cites no authority, and this court knows of none, that requires the agency to prove venue at a permanent custody hearing. It is the appellant's duty to develop a legal argument to demonstrate reversible error by the trial court. State v. Hutzler, 9th Dist. No. 21343, 2003-Ohio-7193, at ¶ 15.
 {¶ 32} Moreover, as CSB notes in its brief, there was evidence before the trial court to establish that the children were removed from their home in Summit County and that is where the complaint was filed. Consequently, venue was established and was proper in the Summit County Court of Common Pleas, Juvenile Division. See R.C. 2151.271; Juv.R. 10 and Juv.R. 11. The fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR V
"The trial court decision should be reversed based on ineffective assistance of counsel[.]"
 {¶ 33} Finally, Carla contends that her trial counsel was ineffective for failing to object to certain hearsay statements of S.V. and D.V. that were admitted through the testimony of the foster mother. In evaluating an ineffective assistance of counsel claim, this court employs a two step process as described inStrickland v. Washington (1984), 466 U.S. 668, 687,80 L. Ed.2d 674. First, the court must determine whether there was a "substantial violation of any of defense counsel's essential duties to his client." State v. Bradley (1989),42 Ohio St.3d 136, 141; State v. Lytle (1976), 48 Ohio St.2d 391, 396.
 {¶ 34} Second, the court must determine if prejudice resulted to Defendant from counsel's ineffectiveness. Bradley,42 Ohio St.3d at 141-42. Prejudice exists where the trial result would have been different but for the alleged deficiencies of counsel. Id. at paragraph three of the syllabus. Defendant bears the burden of proof, and must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, ¶ 48-49, quoting Strickland, 466 U.S. at 687.
 {¶ 35} Carla must demonstrate not only that her trial counsel committed error by failing to timely object to the hearsay statements, but also that the result of the permanent custody hearing would have been different but for that error. The hearsay statements at issue were statements by the children that their mother had guns in her house, that she would lock them in their room, and that they had seen her having sexual relations with her boyfriend. The trial court noted only some of these statements in its decision and none of these facts were fundamental to the trial court's decision. As this Court detailed above, without any mention of these hearsay statements, there was an abundance of evidence to support the trial court's decision. Carla has failed to demonstrate that, without the introduction of the hearsay statements, the outcome of the permanent custody hearing would have been different. The fifth assignment of error is overruled.
 III. {¶ 36} The assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, P.J., Slaby, J., Concur.
[1] Carla has lost custody of older children, both voluntarily and involuntarily, but CSB did not base its complaint or permanent custody motion on those prior terminations, so those facts were not developed in the record.
[2] The factor set forth in R.C. 2151.414(D)(5) was not found to be relevant in this case.