DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Chan C. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her minor child, M.C., and placed the child in the permanent custody of Summit County Children Services Board ("CSB"). We affirm.
 {¶ 2} Mother is the natural mother of six children. M.C., born February 29, 2004, is the youngest of the children and the only child at issue in this appeal. Over a period of several years before this case began, Mother lost custody of her other five children. One of her children was placed in the legal custody of a relative and Mother's parental rights to her other four children were terminated involuntarily.
 {¶ 3} The current case began on August 27, 2004, when CSB filed a complaint alleging that M.C. was a dependent child.[1] CSB expressed concerns that Mother had lost custody of her other children and that CSB continued to be concerned about Mother's mental health. CSB's complaint referred to an incident of domestic violence in Mother's home, involving violence perpetrated against Mother by her then-roommate, and expressed concern about Mother's ability to care for M.C. without assistance. The trial court allowed M.C. to remain in Mother's home under an order of protective supervision by CSB.
 {¶ 4} On January 5, 2005, the police were called to Mother's home during another incident of domestic violence. Mother had gotten into an altercation with a different roommate, and had broken many dishes and knocked over furniture and an aquarium. At the time the police arrived, Mother's behavior was "out of control." Concerned about the safety of M.C., the police removed him from the home pursuant to Juv.R. 6. Mother was taken to the emergency room of a mental health facility. Mother was later discharged from the mental health facility but did not return for the follow-up appointment that was scheduled.
 {¶ 5} CSB's concerns in this case again focused on Mother's mental health issues and her lack of housing, the same problems that had caused Mother to permanently lose custody of her other children. Mother tentatively had been diagnosed with bipolar disorder and she did not seem to dispute that she had mental health problems. Mother repeatedly failed to complete a thorough mental health assessment or to attend counseling on a consistent basis, and she did not consistently take the medication that had been prescribed for her condition. Consequently, Mother has had continual problems over the years with explosive outbursts and an inability to concentrate.
 {¶ 6} On June 8, 2005, CSB moved for permanent custody of M.C. Shortly thereafter, Mother filed a motion for a six-month extension of temporary custody. Following a hearing on both motions, the trial court found that M.C. could not be returned to Mother within a reasonable time or should not be returned to her and that permanent custody was in his best interest. Therefore, it terminated Mother's parental rights and placed M.C. in the permanent custody of CSB. Mother appeals and raises four assignments of error.
 ASSIGNMENT OF ERROR I
"THE TRIAL COURT'S DECISION TERMINATING APPELLANT'S PARENTAL RIGHTS WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 7} Mother contends that the trial court's decision to place M.C. in the permanent custody of CSB was against the manifest weight of the evidence. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, In re WilliamS. (1996), 75 Ohio St.3d 95, 99.
 {¶ 8} Mother concedes that the first prong of the permanent custody test was satisfied because her parental rights to four of M.C.'s siblings had been involuntarily terminated, which necessitated a finding by the trial court that M.C. could not be placed with Mother within a reasonable time or should not be placed with her. See R.C. 2151.414(E)(11). Mother challenges only the best interest prong of the permanent custody test, contending that the trial court's best interest finding was against the manifest weight of the evidence.
 {¶ 9} When reviewing the weight of the evidence, this Court applies the same test in civil cases as it does in criminal cases. Tewarson v. Simon (2001), 141 Ohio App.3d 103, 115. "The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Alterations sic). Id., citing State v.Thompkins (1997), 78 Ohio St. 3d 380, 387, quoting State v.Martin (1983), 20 Ohio App. 3d 172, 175.
 {¶ 10} When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
"(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C.2151.414(D)(1)-(5).
 {¶ 11} Of relevance here is the factor set forth in R.C.2151.414(E)(11), which provides that "[t]he parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child."
 {¶ 12} Mother's interaction with M.C. was limited to weekly, supervised visits. Although Mother was originally scheduled to visit with M.C. twice a week, CSB later decreased the frequency of visits to once a week because Mother was not attending both visits on a consistent basis. Mother attended the majority of her weekly visits with M.C. and the interaction was usually good. At one visit, however, Mother became very frustrated when M.C. hit her and she handed M.C. to the foster mother and left the visit.
 {¶ 13} Mother's visits were always supervised by CSB due to the agency's continuing concern for M.C.'s safety. Mother had a long history of explosive episodes and other unpredictable behavior and she had not yet adequately addressed her mental health issues. Mother had a tentative diagnosis of bipolar disorder, but she had never gone back to complete her mental health assessment, nor was she taking her prescribed medication or attending counseling on a consistent basis.
 {¶ 14} Because M.C. was only twenty months old at the time of the permanent custody hearing, the guardian ad litem spoke on his behalf. She recommended that M.C. be placed in the permanent custody of CSB because that was in his best interest. She emphasized that Mother had made minimal progress on addressing the problems that had led to M.C.'s removal from the home.
 {¶ 15} M.C. lived with Mother for the first eleven months of his life, but he had been under the protective supervision of CSB since he was five months old because CSB had serious concerns about Mother's ability to parent a child without assistance. The protective supervision order was prompted by an incident of domestic violence in the home and, after a second incident during which Mother exhibited erratic behavior, M.C. was removed from the home. M.C. had lived in foster care for half of his life and he was doing well there.
 {¶ 16} The evidence demonstrated that M.C. was in need of a legally secure placement and that there were no other options for a permanent placement such as legal custody to a relative. Consequently, the evidence demonstrated that permanency could only be achieved by placing M.C. in the permanent custody of CSB.
 {¶ 17} The trial court was also required to consider the impact on M.C.'s best interest of its finding that Mother's parental rights to four other siblings of M.C. had been involuntarily terminated. Mother also lost custody of a fifth child who was placed in the legal custody of a relative.
 {¶ 18} Mother's parental rights to her first child were terminated in March 1998 because, after having well over a year to work on the goals of her case plan, Mother had failed to substantially remedy the conditions that had caused the child to be removed from the home. At that time, the concerns of CSB were much the same as they are today. The agency was primarily concerned about Mother's mental health issues and her lack of stable housing. Over the years, several of CSB's case plans for Mother had focused on these same concerns and required Mother to attempt to remedy these problems by obtaining a mental health assessment and following through with counseling and any necessary treatment; and by securing stable employment and housing. Mother continued to move from place to place, however, and she failed to complete a mental health assessment or attend counseling regularly.
 {¶ 19} At the time of the permanent custody hearing in this case, seven and one-half years had passed since Mother's rights to her first child had been terminated. Yet Mother was still moving from place to place with no stable home, she had failed to complete a mental health assessment, and she was not attending counseling regularly. Despite having repeated opportunities to work on case plans, and even after losing child after child, Mother had barely started to work toward reunification with her sixth child, M.C. Although Mother testified that she was ready to work on the goals of her case plan, the trial court concluded that Mother was not likely to remedy these problems in the near future.
 {¶ 20} Given the evidence before the trial court, this Court cannot say that it lost its way in concluding that permanent custody to CSB was in the best interest of M.C. The first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"THE TRIAL COURT'S DECISION DENYING APPELLANT'S MOTION FOR SIX MONTH EXTENSION OF TEMPORARY CUSTODY WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 21} Next, Mother asserts that the trial court should have granted her a six-month extension of temporary custody so that she could complete the requirements of her case plan. As Mother notes, however, the trial court's decision to grant or deny an extension of temporary custody in this case was a discretionary one. See R.C. 2151.415(D)(1) and (2). Moreover, R.C.2151.415(D)(1) authorizes the trial court to extend temporary custody for six months only if it finds, by clear and convincing evidence, that such an extension is in the best interest of the child and that "there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension."
 {¶ 22} Mother has failed to demonstrate an abuse of discretion by the trial court. The evidence before the trial court demonstrated that Mother had not made significant progress on her case plan and there was no reason to believe that she would remedy her parenting problems within the next six months. Mother had completed parenting classes, but she had failed to comply with any of the other requirements of her case plan. Mother had long-standing mental health problems that had caused her to lose all of her other children. Despite having repeated opportunities in several prior cases to remedy her problems, she was in essentially the same position as a parent as she had been when she lost her first child seven years earlier. Mother had not completed a mental health assessment, had not attended counseling regularly, was not taking her prescribed medication, and had not secured stable housing or employment.
 {¶ 23} Mother conceded that she had not complied with the goals of her case plan and asked for more time, insisting that she truly wanted to work toward reunification with her sixth child. Mother's explanation for failing to comply with the requirements of her case plan was that she did not have time, emphasizing that she had been attending school every day. According to Mother's testimony, she had been attending the University of Akron but she "flunked out" because she could not concentrate. Mother also testified that, after she was out of school, she did not have time to get a mental health assessment or go to counseling because she was busy looking for a job and a place to live.
 {¶ 24} Given the evidence before the trial court, it did not abuse its discretion by failing to grant Mother six more months to attempt to address her parenting problems. The second assignment of error is overruled.
 ASSIGNMENT OF ERROR III
"THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AS THE PROSECUTION FAILED TO PRESENT EVIDENCE OF THE LOCATION OF THE MINOR CHILD'S REMOVAL."
 {¶ 25} Mother contends that the trial court should have granted her motion to dismiss because CSB failed to establish that M.C. was removed from a home in Summit County. This Court rejected the same argument in In re S.V., 9th Dist. No. 22116,2004-Ohio-5445. The reasoning of In re S.V. applies with equal force in this case, as Mother's legal argument and the relevant facts are virtually the same as those in In re S.V.
"In support of this argument, [Mother] cites only a criminal case, State v. Headley (1983), 6 Ohio St.3d 475, in which the Ohio Supreme Court held that venue is not a material element of any crime but is a fact that must be proven beyond a reasonable doubt. Id. at 477. [Mother] cites no authority, and this court knows of none, that requires the agency to prove venue at a permanent custody hearing. It is the appellant's duty to develop a legal argument to demonstrate reversible error by the trial court. State v. Hutzler, 9th Dist. No. 21343, 2003-Ohio-7193, at ¶ 15.
"Moreover, as CSB notes in its brief, there was evidence before the trial court to establish that the children were removed from their home in Summit County and that is where the complaint was filed. Consequently, venue was established and was proper in the Summit County Court of Common Pleas, Juvenile Division. See R.C.2151.271; Juv.R. 10 and Juv.R. 11." Id. at ¶ 31-32.
 {¶ 26} The third assignment of error is overruled accordingly.
 ASSIGNMENT OF ERROR IV
"THE TRIAL COURT DECISION SHOULD BE REVERSED BASED ON INEFFECTIVE ASSISTANCE OF COUNSEL[.]"
 {¶ 27} Finally, Mother contends that she received ineffective assistance of trial counsel. Specifically, she points to counsel's failure to object to CSB's admission of Mother's mental health and drug screening records.
 {¶ 28} In order to establish ineffective assistance of counsel, Mother must demonstrate that her counsel's performance fell below an objective standard of reasonable representation and that she was prejudiced by that performance. State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph two of the syllabus, certiorari denied (1990), 497 U.S. 1011. There are countless ways for an attorney to provide effective assistance in a given case and this Court must give great deference to counsel's performance. Strickland v. Washington (1984), 466 U.S. 668,689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." Id.
 {¶ 29} As CSB asserts in its brief, counsel's decision to stipulate to the admissibility of the records was an acceptable trial tactic. See State v. Clayton (1980), 62 Ohio St.2d 45, 49
(holding that debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel). In fact, the parents' counsel in most of the permanent custody hearings reviewed by this Court have stipulated to the admissibility of mental health and drug counseling records.
 {¶ 30} Moreover, Mother has failed to explain how she was prejudiced by the admission of these records. Mother testified and had the opportunity to rebut any of the evidence presented through those records, but instead she tended to corroborate all of the potentially prejudicial evidence that they contained. Mother admitted that she had been diagnosed with bipolar disorder, that she had struggled with mental health issues for many years, and that she had been prescribed medication in the past but was not currently taking any. She further admitted that she does have trouble controlling her racing thoughts and she sometimes loses her temper and has loud and destructive altercations with others in her life. Mother admitted that she had not obtained a complete mental health assessment, nor had she obtained a substance abuse assessment, and that she had not attended counseling or submitted drug screens as required.
 {¶ 31} Therefore, Mother has failed to establish that her trial counsel's performance was deficient or that she was prejudiced as a result. The fourth assignment of error is overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Slaby, P.J. Whitmore, J. concur.
[1] Mother later stipulated to an adjudication of dependency.