**In re SHERMAN et al.**

[Cite as *In re Sherman,* 162 Ohio App.3d 73, 2005-Ohio-3444.]

Court of Appeals of Ohio,
Third District, Hancock County.

Nos. 5–04–47, 5–04–48, 5–04–49 and 5–04–50.

Decided July 5, 2005.

74

Adam Rakestraw, for appellant, Rolland P. Sherman.

Kristen K. Johnson, Hancock County Assistant Prosecuting Attorney, for appellee, Children's Protective Services Unit of Hancock County.

Valerie Roszman, for Dateasha Sherman et al.

BRYANT, Judge.

{¶ 1} Appellant Rolland P. Sherman ("Sherman") brings this appeal from the judgment of the Court of Common Pleas of Hancock County, Juvenile Division, terminating his parental rights and granting permanent custody of the children to Children's Protective Services Unit of Hancock County ("CPSU").

{¶ 2} Rolland and Rhonda Sherman ("Rhonda") are the parents of four children: Dateasha Marie Renee Sherman, born on November 19, 1989; Dateaka Mamie Jo Sherman, born on November 18, 1990; Daneasha Ann Caprice Sherman, born on August 26, 1992; and Daneaka Ann Jerea Sherman, born on January 25, 1994. After experiencing marital problems, which included a domestic-violence charge against Sherman, the couple separated. Sherman moved to Toledo, while Rhonda remained in Findlay with the girls.

{¶ 3} On July 22, 2003, the girls were removed from Rhonda's home by ex parte order. A shelter-care hearing was held on July 24, 2003. An adjudication hearing was held on October 9, 2003. By agreement of the parties, the neglect

charges were dismissed, and Rhonda admitted the dependency of the children. The dispositional hearing was held on October 23, 2003. The trial court ordered that CPSU maintain temporary custody and ordered Sherman to attend parenting classes, attend a domestic-violence education program, and submit to mental-health and substance-abuse screening.

{¶ 4} On June 23, 2004, CPSU filed for permanent custody of the girls. The basis for the motion was that permanent custody was in the best interests of the girls and that the girls could not be placed with either parent within a reasonable time. A hearing was held on the motion on November 3 and November 5, 2004. At that time, Rhonda waived any objection to the motion and agreed to the termination of her parental rights. On November 15, 2004, the trial court granted the motion for permanent custody to CPSU. Sherman appeals from this judgment and raises the following assignments of error.

The trial court erred by failing to appoint separate trial counsel for [Dateasha] who had expressed [a] desire to live with [Sherman] and by permitting the same counsel to continue representing and attempting to advocate for both [Dateasha], who wanted to live with [Sherman], and those daughters who purportedly did not want to live with [Sherman].

The trial court erred in failing to conduct an in camera interview of [Dateasha] to ascertain the need for appointed counsel, and by failing to conduct an in camera interview of the children to determine their understanding of the options available to them.

The trial court erred in admitting hearsay statements of the children.

The trial court erred in failing to exclude the report of psychologist Dr. Connell, when said report was unduly predicated upon inadmissible and unidentifiable hearsay statements.

The trial court erred in failing to appoint a separate psychological expert to assist [Sherman] in cross examining and rebutting the testimony of Dr. David Connell.

The trial court erred in failing to exclude the report of the Guardian Ad Litem, Gene Borkowsky, when said report was unduly predicated upon inadmissible and unidentifiable hearsay statements.

The trial court's decision to terminate [Sherman's] parental rights and grant permanent custody to [CPSU] is not supported by sufficient evidence and/or is against the manifest weight of the evidence.

The cumulative effect of multiple errors occurring at trial deprived [Sherman] of his constitutional rights to a fair trial, even though each individual error may not have constituted cause for reversal.

{¶ 5} The first two assignments of error concern only the case of *In re Dateasha Sherman*, case No. 5–04–50. The remaining assignments of error relate to all of the cases.

 {¶ 6} In the first assignment of error, Sherman claims that the trial court erred by not appointing counsel for Dateasha separate from counsel appointed for her sisters. R.C. 2151.352 provides that a child is entitled to counsel during a proceeding to terminate parental rights, as he or she is a party to the proceeding. The counsel must be separate from that of the guardian ad litem if the two interests conflict. *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110.

{¶ 7} Guidance as to the representation of the interests of multiple clients is found in the Ethical Considerations of the Code of Professional Responsibility.

Maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interestS be conflicting, inconsistent, diverse, or otherwise discordant.

EC 5–14.

If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests. If a lawyer accepted such employment and the interests did become actually differing, he would have to withdraw from employment with likelihood of resulting hardship on the clients; and for this reason it is preferable that he refuse the employment initially.

EC 5–15. The requirement of separate counsel is also addressed in R.C. 2151.352.

A child * * * is entitled to representation by legal counsel at all stages of the proceedings under this chapter or Chapter 2152. of the Revised Code * * *. Counsel must be provided for a child not represented by the child's parent, guardian, or custodian. If the interests of two or more such parties conflict, separate counsel shall be provided for each of them.

R.C. 2151.352

 {¶ 8} The trial court appointed one attorney to represent the guardian ad litem ("GAL") and another to represent all four children in the joint matter. Originally, the four children all were in agreement as to what they wanted. However, Dateasha eventually changed her mind and expressed her desire to

reside with Sherman. The wishes of her sisters did not change. Thus, the four girls had inconsistent interests. When asked about potential conflicts, the attorney for the children stated that it would be difficult for her to advocate Dateasha's position.[1] The attorney stated that she felt "like the Push-me/Pull-me in the Dr. Doolittle movie." She also stated that she would not disapprove of the appointment of another attorney, though she felt it would be a disservice to Dateasha. Obviously, the position taken by three of the girls not to live with their father conflicts with that of Dateasha, who expressed a desire to reside with her father. Given the ethical considerations and the statute requiring separate counsel for parties if conflicts exist, the trial court erred in not appointing separate counsel for Dateasha. The first assignment of error is sustained.

{¶ 9} Sherman claims in the second assignment of error that the trial court erred in not conducting a second in camera interview with Dateasha. A trial court's decision whether to interview a child in camera cannot be reversed absent an abuse of discretion. *In re S.V.*, 9th Dist. No. 22116, 2004-Ohio-5445, 2004 WL 2292825. "[A] juvenile court has the option of either having the child assert his or her opinion, through, for example, an in-camera interview or testimony, or the court may rely upon the guardian ad litem's representations with respect to the child's desires." Id. at ¶ 27 citing *In re Funk*, 11th Dist. Nos. 2002–P–0035, 2002–P–0036, 2002-Ohio-4958, 2002 WL 31107531.

{¶ 10} Here, the trial court conducted in camera interviews with all four children. Subsequent to those interviews, Dateasha indicated that she wanted to speak to the judge again because she had changed her mind. The trial court spoke to Dateasha's attorney and accepted the attorney's representation that Dateasha now wanted to reside with her father. The trial court refused to grant a second in camera interview on the grounds that he had already spoken with the child. Since the trial court accepted the change of mind as the current view of Dateasha, the trial court did not abuse its discretion in refusing to grant the request for a second interview.[2] The second assignment of error is overruled.

{¶ 11} The third, fourth, and sixth assignments of error all claim that the trial court erred by admitting hearsay evidence. The third assignment of error

---

1. In her closing statement, Dateasha's attorney did advocate for Dateasha's decision to reside with her father, but added that she did not feel that this was really what her client wanted.

2. However, a second interview might have been useful to the trial court. The trial court placed Dateasha's attorney in the position of not only having to state her client's wishes, but also having to reveal the contents of the attorney's conversation with Dateasha and the attorney's own opinion of the girl's desires. Ordinarily, an attorney should not be placed in a position of having to reveal potentially confidential information in order to make a client's position known. Instead, it would be better for the trial court to question the girl directly and judge for itself the reasons behind the change of heart.

raises the issue whether the statements by the children are hearsay. The rules of evidence apply to all hearings on motions for permanent custody. Juv.R. 34(I). Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay statements are generally inadmissible. Evid.R. 802. This applies to statements of children in permanent-custody hearings unless an applicable hearsay exception exists. *In re Weatherholt* (Feb. 4, 2000), Seneca App. Nos. 13–99–31, 13–99–32, 2000 WL 126662.

{¶ 12} Sherman claims that the trial court erred by admitting statements made by the children to Dr. Connell and to their social worker. Unless a hearsay exception applies, these statements would be hearsay. However, Sherman does not cite any point in the record where an objection was raised. Thus, the standard of review is whether the error is plain error.

Where a trial judge acts as the fact finder, it is presumed that the judge is capable of disregarding improper testimony. Therefore, unless it appears that the lower court actually relied on the improper testimony in reaching its judgment, a reviewing court should be reluctant to overturn the juvenile court's judgment on a permanent custody issue on the basis of the admission of inadmissible testimony.

Id. The record does not indicate that the trial court relied upon the statements of the girls in reaching its conclusion. The record in this case provides ample evidence, other than the direct statements of the girls, that could support the trial court's conclusions. Thus, this court cannot say that the admission of the girls' statements rose to the level of plain error. The third assignment of error is overruled.

{¶ 13} The fourth assignment of error claims that the trial court erred in admitting the report of Dr. Connell over the objection of Sherman. Dr. Connell testified that his report was based upon his interviews with the children, his interview with the mother, his interview with Sherman, his observation of the interactions between the children and the mother, and the written records presented to him by CPSU. Dr. Connell admitted that most of these reports contained statements allegedly made by the children to the foster parents, who then reported it to the social worker, who wrote it in the report. Dr. Connell testified that he was hired by CPSU to determine whether CPSU should request that the children be placed in long-term custody or whether permanent custody should be requested. At no time did Dr. Connell provide any treatment for the children. Dr. Connell also testified that he had relied upon the substance of the reports, including the alleged statements, when making his report.

{¶ 14} "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in

evidence at the hearing." Evid.R. 703. In this case, Dr. Connell admits that his report is based upon not only his observations but on the observations of others and statements made to others by the parties and placed in reports. Those reports were not admitted into evidence. They also contained numerous accounts of statements and actions not perceived by him personally. The report specifically states that he relied upon the reports of CPSU, the Family Resource Centers in Findlay, and the Children's Resource Center in Bowling Green. Dr. Connell testified that these reports contained statements made by third parties about things that allegedly happened and statements allegedly made by the children to their foster parents. In describing Sherman, the report states that Sherman "is consistently described as physically and emotionally abusive, and the fact that he could not get through a series of visits with his children in Bowling Green without demeaning them and striking one speaks volumes to his ability to parent over the long term." This information came from the reports, which were not admitted into evidence.[3] Without the admission of the reports or testimony of the parties who made the statements in the reports, or the direct observation by Dr. Connell, his report does not meet the requirements of Evid.R. 703 and should have been excluded. The trial court considered Dr. Connell's report in reaching its conclusions as evidenced by the sixth finding of fact. Thus, the fourth assignment of error is sustained.

{¶ 15} The sixth assignment of error raises the question whether the GAL's reports should have been admitted over objection. During the hearing, the GAL testified as to the conclusions of her report, and then the report was admitted over Sherman's objections. An investigative report of a GAL is hearsay because it is not, and is not supposed to be, submitted under oath. *In re Duncan/Walker Children* (1996), 109 Ohio App.3d 841, 673 N.E.2d 217. Thus, to be admissible, it must fall within a hearsay exception.[4]

{¶ 16} Here, the GAL's reports indicate that the bases for the reports are interviews with the mother, the foster parents, the CPSU caseworker, the Kids Count Too caseworkers, the Harmony House Coordinator, and Brett Hagerty, the CASA Supervisor.[5] The GAL visited with the children at their

---

3. The cases cited by CPSU involved facts distinguishable from those in this case. In those cases, either the reports upon which the opinion was based were admitted or no objection was made to the opinion.

4. CPSU argues that because the statute requires the GAL to submit a report it cannot be hearsay. The law is clear that the report is hearsay and cannot be considered as evidence. Instead, the GAL should testify and be subject to cross-examination.

5. The GAL admits that she did not choose to visit Sherman at his home and did not interview him. She did observe him with the children at Harmony House, but did not tell him she was

foster homes and at the Kids Count Too agency, observed visitation at Harmony House and CPSU, and had phone conversations with the foster parents. Additionally, the GAL's reports are also based upon the following documents: court documents, reports and case plans from CPSU, reports and case plans from Kids Count Too Foster Agency, the records of the prior GAL, Deb Benson, and the psychological report of Dr. Connell. Most of the reports were never entered into evidence. Moreover, several of the people with whom the GAL spoke and whose statements provided the basis for the report did not testify. The trial court did rely upon the recommendation of the GAL, as the trial court states that it considered the written report of the GAL. Since the trial court clearly relied upon a document predicated upon hearsay, Sherman's sixth assignment of error is sustained.

{¶ 17} The fifth assignment of error claims that the trial court erred by denying Sherman's request for a separate psychological expert to be appointed to assist Sherman in rebutting Dr. Connell's testimony. This court has previously addressed this issue in *In re Shaeffer* (1993), 85 Ohio App.3d 683, 621 N.E.2d 426. "[W]here the parent's mental health is the principal issue, the risk of erroneous deprivation is a serious one and the merits of the proposed procedural safeguard are significant." Id. at 691, 621 N.E.2d 426. Although it is not required that a psychiatric expert be appointed in every permanent-custody proceeding, where a parent's mental health is made an issue and a parent makes a timely request for such assistance, the assistance of a court-appointed psychiatric expert is mandated by the United States Constitution. Id.

> [W]hen an expert's testimony is part of the case for permanent custody, then the court should appoint an expert. "Where the juvenile court grants the state's request for a psychological examination of an indigent parent to be performed by an examiner selected and paid by the state the parent is entitled to an expert of his or her own."

*In re Elliott*, 7th Dist. Nos. 03JE30, 03JE33, 2004-Ohio-388, 2004 WL 187413, at ¶ 22, quoting *In re Stanley* (Dec. 7, 1993), Franklin App. No. 93 AP–972, 1993 WL 512502.

{¶ 18} In this case, CPSU selected and paid Dr. Connell for the sole purpose of completing psychological exams on the girls, the mother, and Sherman to determine whether permanent custody should be sought. Sherman was required to be interviewed by Dr. Connell and was given various psychological exams. Dr. Connell then testified as to his interpretation of the tests and to the

---

doing so and did not interview him after the visit. She testified that she had never had direct contact with him. Additionally, she testified that even if he had satisfactorily completed the case plan, she did not think the children should be placed with him.

reasons for Sherman's behavior. Immediately upon getting the report of Dr. Connell, Sherman requested his own expert to rebut the conclusions put forth by Dr. Connell. This request was denied. By requiring Sherman to submit to the psychological exams and using the conclusions of the psychologist, CPSU placed Sherman's mental health at issue. The trial court relied upon the findings of the psychologist when reaching its decision, which prejudiced Sherman. Thus the trial court should have granted Sherman's request to his own expert. The fifth assignment of error is sustained.

{¶ 19} In the seventh assignment of error, Sherman claims that the trial court's verdict is not supported by sufficient evidence or is against the manifest weight of the evidence. The final assignment of error claims that the cumulative effect of the errors resulted in prejudicial error. Having found prejudicial error concerning the procedure and the admission of hearsay evidence, we find that these assignments of error are moot and we need not address them.

{¶ 20} The judgment of the Court of Common Pleas of Hancock County, Juvenile Division, is affirmed in part and reversed in part. The matter is remanded for further proceedings.

Judgments affirmed in part
and reversed in part,
and causes remanded.

ROGERS, J., concurs.

SHAW, J., concurs in judgment only.