OPINION
{¶ 1} Having vacated the previously issued opinion in this case, Inre: Sherman, 162 Ohio App.3d 73, 2005-Ohio-3444, we issue the following opinion upon motion for reconsideration.
 {¶ 2} Appellant Rolland P. Sherman ("Sherman") brings this appeal from the judgment of the Court of Common Pleas of Hancock County, Juvenile Division, terminating his parental rights and granting permanent custody of the children to Children's Protective Services Unit of Hancock County ("CPSU").
 {¶ 3} Rolland and Rhonda ("Rhonda") Sherman are the parents of four children: Dateasha Marie Renee Sherman ("Dateasha"), born on November 19, 1989; Dateaka Mamie Jo Sherman ("Dateaka"), born on November 18, 1990; Daneasha Ann Caprice Sherman, born on August 26, 1992; and Daneaka Ann Jerea Sherman, born on January 25, 1994. After experiencing marital problems, which included a domestic violence charge against Sherman, the couple separated. Sherman moved to Toledo while Rhonda remained in Findlay with the girls.
 {¶ 4} On July 22, 2003, the girls were removed from Rhonda's home by ex parte order. A shelter care hearing was held on July 24, 2003. An adjudication hearing was held on October 9, 2003. By agreement of the parties, the neglect charges were dismissed and Rhonda admitted to the dependency of the children. The dispositional hearing was held on October 23, 2003. The trial court ordered that CPSU maintain temporary custody and approved an amended case plan, which included activities for Sherman. Sherman was ordered to attend parenting classes, attend a domestic violence education program, and submit to a mental health and substance abuse screening.
 {¶ 5} On June 23, 2004, CPSU filed for permanent custody of the girls. The basis for the motion was that permanent custody was in the best interests of the girls and that the girls could not be placed with either parent within a reasonable time. A hearing was held on the motion on November 3 and November 5, 2004. At that time, Rhonda waived any objection to the motion and agreed to the termination of her parental rights. On November 15, 2004, the trial court granted the motion for permanent custody to CPSU. Sherman appeals from this judgment and raises the following assignments of error.
The trial court erred by failing to appoint separate trial counsel for[Dateasha] who had expressed [a] desire to live with [Sherman] and bypermitting the same counsel to continue representing and attempting toadvocate for both [Dateasha], who wanted to live with [Sherman], andthose daughters who purportedly did not want to live with [Sherman].
 The trial court erred in failing to conduct an in camera interview of[Dateasha] to ascertain the need for appointed counsel, and by failing toconduct an in camera interview of the children to determine theirunderstanding of the options available to them.
 The trial court erred in admitting hearsay statements of the children.
 The trial court erred in failing to exclude the report of psychologistDr. Connell, when said report was unduly predicated upon inadmissible andunidentifiable hearsay statements.
 The trial court erred in failing to appoint a separate psychologicalexpert to assist [Sherman] in cross examining and rebutting the testimonyof Dr. David Connell.
 The trial court erred in failing to exclude the report of the GuardianAd Litem, Gene Borkowsky, when said report was unduly predicated uponinadmissible and unidentifiable hearsay statements.
 The trial court's decision to terminate [Sherman's] parental rights andgrant permanent custody to [CPSU] is not supported by sufficient evidenceand/or is against the manifest weight of the evidence.
 The cumulative effect of multiple errors occurring at trial deprived[Sherman] of his constitutional rights to a fair trial, even though eachindividual error may not have constituted cause for reversal.
 I {¶ 6} The first two assignments of error only concern case number 5-04-50, involving Dateasha Sherman. These claims both stem from the fact that Dateasha, unlike her sisters, expressed a desire to reside with her father. All four girls initially indicated to the court, the GAL, and their counsel that they did not wish to stay with their father. The court conducted an in camera interview with each of the girls, and Dateasha again told the court that she did not wish to live with her father. However, prior to the final hearing Dateasha expressed to her counsel that she had a change of heart. The record indicates that this occurred after she had unsupervised contact with Sherman in the court hallway, in violation of court order. Thereafter, during the hearing the court was made aware of the fact that Dateasha was now expressing a desire to live with her father.
 {¶ 7} In the first assignment of error, Sherman claims that the trial court erred by refusing to appoint separate counsel for Dateasha because her interests potentially conflicted with her sisters'. He claims in the second assignment of error that the trial court erred in denying her a second in camera review to determine her true wishes. Because these claims are interconnected, we choose to address them together.
 {¶ 8} The Supreme Court of Ohio has recognized that a child who is the subject of a proceeding in juvenile court to terminate parental rights is a party to that proceeding and is entitled in some circumstances to independent representation. In re Williams, 101 Ohio St.4d 398,2004-Ohio-1500, syllabus. The Williams Court noted that "courts should make a determination, on a case-by-case basis, whether the child actually needs independent counsel, taking into account the maturity of the child and the possibility of the child's guardian ad litem being appointed to represent the child." Id., at ¶ 17. The Court specifically noted the potential conflict between a guardian ad litem, whose duty it is to "recommend to the court what the guardian feels is in the best interest" of the child, and the duty of a lawyer to zealously represent his client. Id. at ¶ 18. Following the Supreme Court's decision inWilliams, this court noted that a trial court would "be well advised to more specifically address the wishes of the children." In re Lane, Marion App. No. 9-03-61, 9-03-62, 2004-Ohio-2798, at ¶ 46.
 {¶ 9} In the instant case, the trial court made the specific determination that separate counsel was required for the girls, and appointed both a guardian ad litem and independent counsel to represent the interests of the four children. However, when the trial court learned that Dateasha's interests were potentially in conflict with her sisters', the trial court made no effort to determine her wishes and did not appoint separate counsel to represent her.
 {¶ 10} The girls' appointed counsel indicated to the court that she was unsure of the sincerity of Dateasha's desire to live with Sherman, noting that she only indicated this desire after her unsupervised contact with her father. Counsel specifically stated,
[I]t makes it difficult for me in terms of * * * advocating for herwhat I feel [are her wishes] — she didn't relate to me something that Ifelt was very forceful in what she was saying, in terms of what shewanted with her father.
After that revelation, Sherman's counsel requested that the court conduct a second in camera interview with Dateasha to ascertain her wishes and determine whether separate counsel was necessary to protect her interests.
 {¶ 11} Ordinarily, a trial court's decision whether to conduct an in camera interview with a child cannot be reversed absent an abuse of discretion. In re S.V., 9th Dist. No. 22116, 2004-Ohio-5445. "[A] juvenile court has the option of either having the child assert his or her opinion, through, for example, an in camera interview or testimony, or the court may rely upon the guardian ad litem's representations with respect to the child's desires." Id at ¶ 2 (citing In re Frank, 11th Dist. Nos. 2002-P-0035 and 2002-P-0036, 2002-Ohio-4958).
 {¶ 12} However, in the instant case the trial court was obligated to conduct a second in camera interview to determine whether Dateasha needed independent counsel. The appointed counsel for the four children was unsure of Dateasha's interests and could not adequately represent her if she did indeed desire to live with her father, because then her interests were adverse to her sisters'. Moreover, the GAL could not represent Dateasha due to her belief that living with Sherman was not in the girls' best interests. Accordingly, an in camera interview was necessary in this situation to discover whether Dateasha's interests were, in fact, in conflict with her sisters'. If so, separate counsel was required under the Supreme Court's decision in Williams.
 {¶ 13} Therefore, we find that it was an abuse of the trial court's discretion to deny Dateasha a second in camera interview and rely on counsel's representation that her interests were adverse to her sisters', while refusing to appoint Dateasha separate counsel. The first and second assignments of error are sustained.
 II {¶ 14} The third and fourth assignments of error both claim that the trial court erred by admitting hearsay evidence. The third assignment of error raises the issue of whether the statements by the children are hearsay. The rules of evidence apply to all hearings on motions for permanent custody. Juv.R. 34(I). Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay statements are generally inadmissible. Evid.R. 802. This applies to statements of children in permanent custody hearings unless an applicable hearsay exception exists. In re Weatherholt (Feb. 4, 2000), Seneca App. Nos. 13-99-31, 13-99-32, unreported.
 {¶ 15} Sherman claims that the trial court erred by admitting statements made by the children to Dr. Connell and to their social worker. Unless a hearsay exception applies, these statements would be hearsay. However, Sherman does not point to anything in the record indicating that an objection was raised. Thus, the standard of review is whether the error is plain error.
Where a trial judge acts as the fact finder, it is presumed that thejudge is capable of disregarding improper testimony. Therefore, unless itappears that the lower court actually relied on the improper testimony inreaching its judgment, a reviewing court should be reluctant to overturnthe juvenile court's judgment on a permanent custody issue on the basisof the admission of inadmissible testimony.
Id. A review of the record does not indicate that the trial court relied upon the statements of the girls in reaching its conclusion. The record in this case provides ample evidence, other than the direct statements of the girls which could support the trial court's conclusions. Thus, this court cannot say that the admission of the girls' statements rose to the level of plain error. The third assignment of error is overruled.
 {¶ 16} Appellant's fourth assignment of error is that the trial court erred in admitting the report of Dr. Connell, the psychologist who testified at the hearing, over Sherman's objection. Sherman claims that Dr. Connell's report was based, in part, on inadmissible hearsay evidence, and therefore his report should not have been admitted. "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." Evid.R. 703.
 {¶ 17} Dr. Connell testified that his report was based upon his interviews with the children, his interview with the mother, his interview with Sherman, his observation of the interactions between the children and the mother, and the written records presented to him by CPSU. Thus, Dr. Connell admits that his report is based upon not only his observations, but the observations of others and statements made to others by the parties and placed in reports. Dr. Connell testified that these reports contained statements made by third parties about things that allegedly happened and statements allegedly made by the children to their foster parents. He admitted that many of these statements were allegedly made by the children to the foster parents, who then reported it to the social worker, who wrote it in the report.
 {¶ 18} Moreover, Dr. Connell testified that he had relied upon the substance of the reports, including the alleged statements when making his own report. He specifically states in his report that he relied upon the reports of CPSU, the Family Resource Centers in Findlay, and the Children's Resource Center in Bowling Green. In describing Sherman, Dr. Connell's report states that Sherman "is consistently described as physically and emotionally abusive, and the fact that he could not get through a series of visits with his children in Bowling Green without demeaning them and striking one speaks volumes to his ability to parent over the long term." Report 26-27.
 {¶ 19} Dr. Connell relied on the hearsay statements in the other reports, and his report indicates that this information, which was not admitted into evidence, influenced his report.[1] The other reports were not admitted into evidence and they contained numerous accounts of statements and actions not perceived by him personally. Without the admission of the reports or testimony of the parties who made the statements in the reports, or the direct observation by Dr. Connell, his report does not meet the requirements of Evid.R. 703 and should have been excluded.
 {¶ 20} Ordinarily, however, when the trial court is the trier of fact the judge can sift through the evidence and is presumed to be capable of disregarding improper hearsay evidence. In re Sims (1983),13 Ohio App.3d 37, 41 (citations omitted). Therefore, in order to show that there was reversible error in admitting the report Sherman must also establish that the statements were prejudicial or that the trial court relied on them. Id.; see also In the matter of Sonya Sypher (March 11, 2002), 7th Dist. No. 01-BA-36, unreported, 2002-Ohio-1026, 2002 WL 378333, at *2.
 {¶ 21} The record is clear that the trial court considered Dr. Connell's report, and the statements in it which were based on hearsay testimony, in reaching its conclusions. This is specifically evident in the trial court's sixth finding of fact, where the court concludes: "This court has also considered the conclusion of David K. Connell, Ph.D., that neither parent has the temperament, skills, or personal discipline to be an effective parent to their child." This statement is taken almost verbatim from Dr. Connell's report, and Dr. Connell did not testify to this conclusion at the hearing. It is also evident that Dr. Connell relied on the hearsay statements in coming to this conclusion. Accordingly, the record indicates that the trial court specifically relied on expert testimony that was based on inadmissible hearsay evidence, which constitutes reversible error. Thus, the fourth assignment of error is sustained.
 III {¶ 22} In his fifth assignment of error, Sherman argues that the trial court erred by denying his request for a separate psychological expert to be appointed to assist him in rebutting Dr. Connell's testimony. He argues that his mental health was made an issue in the case by Dr. Connell's testimony, and therefore his due process rights required that a psychiatric expert be appointed to assist him in raising a defense to those claims.
 {¶ 23} This court has previously addressed this issue in In reShaeffer (1993), 85 Ohio App.3d 683, where we specifically held that appointment of a psychiatric expert is not necessary in every permanent custody proceeding where the mental health of the parent is made an issue. Id. at 691. In Shaeffer, we found that a determination of whether an appointment was necessary required balancing the parents' interest in the custody of their child against the state's interest in the efficient and economic administration of permanent custody proceedings. In that case we concluded that the parent's interests outweighed in cases "where the parent's mental health is the principal issue." Shaeffer,85 Ohio App.3d at 691. In such cases the procedural safeguard of providing a separate court-appointed expert to assist the parent was required. Id.
 {¶ 24} We made clear, however, that our holding was limited to cases in which the indigent parent's mental or emotional health was clearly thepredominant issue from the outset and ultimately became the determinative issue * * *." Id. (emphasis added). Therefore, in cases where the parents' mental or emotional health was never a predominate issue in the case, having a separate expert appointed provides only minimal protection to the parents' interest in maintaining the custody their child, and is therefore unnecessary.
 {¶ 25} The record is clear that Sherman's mental state was not an issue in this case, much less a predominate issue. Although the case plan required Sherman to undergo a mental health assessment, Dr. Connell testified that the psychiatric test could not be interpreted and he gave no indication that Sherman had any psychiatric or psychological problems. Instead, Dr. Connell indicated that there was nothing that arose in his evaluation of Sherman that concerned him if Sherman was to gain custody of the children. Rather, the primary concern with Sherman was past issues with domestic violence and substance abuse. There was also a concern that Sherman had not previously been involved in the girls' lives.
 {¶ 26} Since Sherman's mental state was not a predominate issue in this case a court-appointed expert was unnecessary. As we made clear inShaeffer, a psychiatric expert is not required in every permanent custody proceeding. Id. at 691; see also In re Hess, 2nd Dist. No. 02 JE 37, 2003-Ohio-1429. Were we to hold that an expert was required in this instance, we would essentially be holding that an expert is required in any case where the indigent parent requests a court-appointed expert. As we did in Shaeffer, we decline to take that further step. Accordingly, Sherman's fifth assignment of error is overruled.
 IV {¶ 27} In his sixth assignment of error, Sherman argues that the trial court erred by admitting the GAL's report into evidence over his objection. The trial court has broad discretion over evidentiary rulings, and such rulings will not be reversed on appeal absent an abuse of discretion. State v. Lundy (1987), 41 Ohio App.3d 163, 169. The term "abuse of discretion" connotes that the court's decision is unreasonable, arbitrary, or unconscionable; an abuse of discretion constitutes more than an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 28} The GAL is an investigator for the court within the meaning of R.C. 3109.04(C). Webb v. Lane (March 15, 2000), 4th Dist. No. 99CA12, unreported, 2000 WL 290383, at *2. The role of the GAL is to investigate the ward's situation and then make a recommendation to the trial court; in permanent custody proceedings the GAL is to recommend what is in the child's best interests. In re Ridenour, 11th Dist. Nos. 203-L-146, 203-L-147, and 203-L-148, 2004-Ohio-1958; In the matter of: SarahMaloney (May 18, 1999), 7th Dist. No. 95 CO 74, unreported, 1999 WL 342766, at *12 (citing In re Baby Girl Baxter (1985), 17 Ohio St.3d 229). The GAL's recommendation is contained within a written report, which "shall be submitted to the court * * * but shall not be submitted under oath." R.C. 2151.414(C). "Thus, the purpose of the [GAL]'s report is to give the court information in addition to that elicited at the hearing. * * * [It] must be an independent source of information to guide the juvenile court in making its decision." In re Robinson/Brooks Children,
5th Dist. No. 2004-CA-00094, 2004-Ohio-6142, at ¶ 13.
 {¶ 29} Ordinarily, a GAL's report is not considered evidence, but is merely submitted as additional information for the court's consideration, similar to a pre-sentence investigation report in a criminal proceeding. However, Ohio courts have held that "[a] trial court may consider the report of a court-appointed investigator without the oral testimony of the investigator and despite the hearsay inherent in such a report." Webb, supra at *3 (citing Corrigan v. Corrigan (Dec. 30, 1986), Ross App. No. 1300, unreported). In Webb, the Fourth District Court of Appeals specifically held that a GAL report can be considered by the trial court, despite any hearsay contained in the report, so long as the trial court provides protection of the parties' due process rights.
 {¶ 30} In order to protect the parties' due process rights, the trial court must make the guardian ad litem available for direct and cross-examination. Id. at *4. "Once the trial court [admits] the guardian's report into evidence, the trial court [is] required to permit [the parents] to cross-examine the guardian." In re Hoffman (Nov. 28, 2001), 5th Dist. No. 2001CA 00207, unreported, at *2 (citing In re Duncan/Walker Children (1996), 109 Ohio App.3d 845). The guardian need not testify before the report can be considered by the trial court, but the guardian must be available for cross-examination by the parties. Martinv. Martin (March 13, 2002) 9th Dist. No. 20567, unreported, 2002 WL 388902, at *4
 {¶ 31} In the instant case, the GAL testified at the hearing and was examined by both parties. Therefore, the trial court was permitted to consider the contents of the report irrespective of the hearsay contained therein. Moreover, in this proceeding the trial court was the trier of fact and is therefore presumed to be able to disregard any inadmissible hearsay contained in the report. In the matter of Sonya Sypher (March 11, 2002), 7th Dist. No. 01-BA-36, unreported, 2002-Ohio-1026, 2002 WL 378333, at *2. Accordingly, we find that the trial court did not abuse its discretion in considering the GAL report because the guardian was available for cross-examination by both parties. Appellant's sixth assignment of error is overruled.
 V {¶ 32} In the seventh assignment of error, Sherman claims that the trial court's verdict is not supported by sufficient evidence or is against the manifest weight of the evidence. The final assignment of error claims that the cumulative effect of the errors resulted in prejudicial error. Having found prejudicial error concerning the procedure and the admission of Dr. Connell's report previously, these assignments of error are rendered moot and we need not address them.
 {¶ 33} Based on the foregoing, the judgment of the Court of Common Pleas of Hancock County, Juvenile Division, is affirmed in part and reversed in part. The matter is remanded for further proceedings.
Judgments Affirmed in Part, Reversed in Part and Causes Remanded.
ROGERS, J. concurs.
[1] The cases cited by CPSU involved facts distinguishable from those in this case. In those cases either the reports upon which the opinion was based were admitted or no objection was made to the opinion.