[Cite as *In re R.J.E.*, 2017-Ohio-886.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: | : | **O P I N I O N** |
| R.J.E., A MINOR. | : | |
| | : | **CASE NO. 2016-P-0025** |
| | : | |
| | : | |

Appeal from the Portage County Court of Common Pleas, Juvenile Division, Case No. 2015 JCG 00793.

Judgment: Affirmed.

*Kani Harvey Hightower,* Lynda Harvey Williams & Associates, LLC, One Cascade Plaza, Suite 2100, Akron, OH 44308 (For Appellants – Donna Park, Ronald Park, and Brandi Ollice).

*Mary Jane Trapp,* Thrasher, Dinsmore & Dolan, L.P.A., 1400 West Sixth Street, Suite 400, Cleveland, OH 44113-1305 (For Appellees – Stephen W. Evans and Lori L. Evans).

*Leonard J. Breiding, II,* 4825 Almond Way, Ravenna, OH 44266 (Guardian ad litem.)

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellants, Donna Park, Ronald Park, and Brandi Ollice, appeal the judgment of the Portage County Court of Common Pleas, Juvenile Division, granting the motion for change of custody filed by appellees, Stephen Evans and Lori Evans. The principal issue is whether the trial court's judgment granting custody of the child, R.J.E.,

to appellees was supported by competent, credible evidence. For the reasons that follow, we affirm.

{¶2} On September 18, 2015, appellees, Stephen Evans and his wife, Lori Evans, filed a motion for change of parental rights and responsibilities (custody) regarding their grandson, R.J.E., who was then three and one-half years old. At that time, appellant, Brandi Ollice, the child's mother ("mother"), was the legal custodian of the child.

{¶3} The court held a pretrial on October 20, 2015. The Evans, mother, and the child's father, Adam Evans ("father") appeared.

{¶4} Shortly thereafter, on November 9, 2015, appellants, Donna Park and her husband, Ronald Park, filed a motion to intervene and a motion for change of parental rights and responsibilities (custody) regarding their grandson, R.J.E.

{¶5} On January 15, 2016, the court appointed Leonard J. Breiding, II, Esq., as the child's guardian ad litem and also granted the Parks' motion to intervene.

{¶6} The trial court held a pretrial on February 2, 2016, at which all parties were present, including father. The court set the matter for hearing on April 8, 2016.

{¶7} The guardian ad litem filed his investigative report, recommending that the Evans be granted legal custody of R.J.E. On the day of the hearing, April 8, 2016, the Evans, the Parks, mother, and the guardian appeared and testified. However, father failed to appear, although he was given notice of this hearing at the last pretrial.

{¶8} The evidence established that mother and father were never married. Father is the son of appellee, Stephen Evans (R.J.E.'s paternal grandfather), and

appellant, Donna Park (R.J.E.'s paternal grandmother). Mother's parents are not parties in this action.

{¶9} Mr. Breiding identified his report in which he said that R.J.E. was born a "drug baby," and thus needs continuing medical care to test for Hepatitis C and other medical conditions associated with mother's in utero drug use. The guardian noted, and Stephen and Lori Evans agreed, that R.J.E.'s speech is delayed and very difficult to understand. Further, the guardian said the child was not fully potty trained and was still wearing a diaper. The guardian said the Parks minimize these developmental issues, while the Evans are committed to addressing them and to providing continuing medical care for the child.

{¶10} Mr. Breiding noted that mother and father have a long history of drug use and criminal activity associated with drugs. He said that mother is on probation in Portage County for felony drug possession and recently violated her probation. Mother testified she violated her probation by "testing dirty" for meth and, as a result, she is now incarcerated in a detention/treatment facility in Kent, Ohio.

{¶11} Mr. Breiding said that father's whereabouts are currently unknown. He is "on the run" from multiple jurisdictions. He had been living with the Parks and R.J.E. until three weeks before the hearing when the Parks asked him to leave because they suspected he was using drugs. Shortly thereafter, they found meth hidden in the house. While father was still living with the Parks and R.J.E., the Adult Parole Authority issued a warrant for his arrest for a violation of post-release control; the Akron Municipal Court issued a warrant for his arrest on a new drug offense; and he was also charged with felony escape in Summit County.

**{¶12}** Based on the foregoing, Mr. Breiding concluded that neither parent can care for R.J.E. at this time and it is in his best interest to be placed in the legal custody of one of his grandparents. He also said the child's parents should not have unsupervised visitation with the child due to their continuing drug abuse and criminal activity. Mother admitted that she is unable to care for R.J.E. at this time.

**{¶13}** Mr. Breiding said that R.J.E. has lived off and on with the Parks for most of his life and continuously since August 2015 and is bonded with them. He also said that R.J.E. has spent weeks at a time in the Evans' home; the Evans have had regular and consistent visitation with R.J.E. since his birth; and he is also bonded with them.

**{¶14}** Mr. Breiding noted that the Parks' three adult children have struggled with substance abuse issues. Mr. Breiding said that because the Parks allowed father to live in their home with R.J.E. while father was using drugs and engaging in criminal conduct, the Parks appear to be "enablers" of father, which may impinge on their ability to protect R.J.E. and to put his interests first.

**{¶15}** Mrs. Park essentially admitted she has enabled her son. Ronald Park admitted that he and his wife have taken R.J.E. to visit mother and allowed her to have unsupervised visits with him for extended periods of time.

**{¶16}** In contrast, Mr. Breiding said that the Evans have been firm in dealing with father and do not appear to be enablers of his drug and criminal activities. Lori Evans testified she recently discovered father was keeping drugs in the Parks' home and this concerns her and her husband.

4

**{¶17}** Mr. Breiding said the Evans have the most stable home and will give R.J.E. the best chance at long-term success. He recommended that R.J.E. be placed in their legal custody and that the Parks be given visitation.

**{¶18}** On April 21, 2016, the trial court issued its judgment granting legal custody of R.J.E. to the Evans. The court also granted liberal visitation to the Parks and supervised visitation to both parents. The court denied appellants' motion to stay and, thus, R.J.E. has now been living with the Evans for nine months. The court subsequently issued a nunc pro tunc entry to correct the familial relationships of father's parents. Appellants appeal the court's judgment, asserting four assignments of error. For their first, they allege:

**{¶19}** "The trial court erred as a matter of law, abused its discretion, and violated the parents' Constitutional rights to due process when awarded [sic.] legal custody to the paternal grandfather and paternal step-grandmother when it failed to make the requisite finding of parental unfitness."

**{¶20}** As a preliminary matter, appellees raise the issue of standing. "Only litigants with standing are entitled to have a court determine the merits of the claims they have presented." *In re S.G.D.F.*, 10th Dist. Franklin Nos. 16AP-57 and 16AP-123, 2016-Ohio-7134, ¶11, citing *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, ¶20. A party has standing when he has a "'right to make a legal claim * * *.'" *Id.*, citing *Ohio Pyro Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, ¶27, quoting Black's Law Dictionary 1442 (8th Ed.2004). "Similarly, a party who attempts to appeal a judgment must meet standing requirements to invoke the jurisdiction of the appellate court." *In re S.G.D.F., supra,* citing *Ohio Contract Carriers Assn. v. Public Util.*

5

*Comm. of Ohio*, 140 Ohio St. 160, 161 (1942). "One of these requirements is that a party who seeks to appeal must assert his own rights." *In re S.G.D.F., supra,* citing *In re N.G.*, 1st Dist. Hamilton No. C-130684, 2014-Ohio-720, ¶7.

{¶21} The Tenth District considered facts similar to those presented here in *In re S.G.D.F, supra*. In *S.G.D.F.*, the mother did not seek custody; instead she asserted issues on behalf of the father, arguing that since there was no finding of parental unsuitability as to father, the court erred in not awarding custody to him. The Tenth District held that "'[a]n appellant cannot raise issues on another's behalf, especially when that party could have appealed the issues appellant posits.'" *Id.* at ¶14, quoting *In re D.T.*, 10th Dist. Franklin No. 07AP-853, 2008-Ohio-2287, ¶8. The Tenth District in *S.G.D.F.* also cited *In re J.C.*, 10th Dist. Franklin No. 09AP-1112, 2010-Ohio-2422, ¶15, in which the Tenth District held that a mother lacked standing to assert rights of a grandparent. Thus, the Tenth District in *S.G.D.F.*, held that the mother did not have standing to appeal. *Id.* at ¶14, 16.

{¶22} Similarly here, mother did not seek custody in the trial court and does not seek it on appeal; instead, she supports the claim for custody asserted by the Parks. Mother argues that since there was no finding of parental unsuitability, the court erred in awarding custody to the Evans. Since mother's assignments of error do not assert any claim on her own behalf, but, rather, assert issues solely on behalf of the Parks, mother does not have standing to pursue this appeal.

{¶23} However, the Parks intervened in this action; litigated their motion for custody below; and now appeal, citing alleged deficiencies in the trial court's judgment.

6

For these reasons, the Parks have standing to pursue this appeal. *D.T., supra,* at ¶8; *In re Fusik*, 4th Dist. Athens No. 02CA16, 2002-Ohio-4410, ¶21.

**{¶24}** Further, even if mother had standing, her appeal would fail because she waived her right to pursue custody. In fact, she conceded below she was unable to care for the child and recommended the Parks be given custody. "'It is well-settled in Ohio that a reviewing court will not consider issues which the appellant failed to raise in the trial court.'" *Stalloy Metals, Inc. v. Kennametal, Inc.*, 11th Dist. Geauga No. 2013-G-3151, 2014-Ohio-4134, ¶26, quoting *Fijalkovich v. W. Bishop Co.*, 123 Ohio App.3d 38, 43 (8th Dist.1997), citing *Stores Realty Co. v. Cleveland*, 41 Ohio St.2d 41 (1975). Moreover, mother has not demonstrated the existence of plain error and we do not discern such error. The Supreme Court of Ohio has held that the party asserting plain error has the burden to demonstrate such error. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶17. "In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997).

**{¶25}** Turning now to the merits of the appeal, the Parks argue the trial court abused its discretion in awarding custody to the Evans because the court did not find both parents were unsuitable.

{¶26} This court, in *In re E.B.*, 11th Dist. Lake No. 2013-L-077, 2014-Ohio-5764, set forth the test that must be met for a trial court to award custody to a non-parent, as follows:

> {¶27} In a child custody proceeding between a parent and a non-parent, the trial court must find the parent unsuitable before awarding custody to the non-parent. *In re Perales*, 52 Ohio St.2d 89 (1977), syllabus. In making its determination as to the unsuitability of the parent, the non-parent must prove by a preponderance of the evidence that, as pertinent here, * * * an award of custody to the parent would be detrimental to the child. *Id.*

> {¶28} The phrase "detrimental to the child" is not defined by the Revised Code. However, Ohio courts have held that for an award of custody to a parent to be detrimental to the child, there must be serious problems with the unsuitable parent. *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶12. *E.B., supra*, at ¶35-36.

{¶29} Further, the Ninth District in *Baker v. Baker*, 113 Ohio App.3d 805 (9th Dist.1996), in citing *Perales,* held that an award of custody to a non-parent does "not require an explicit finding of unsuitability, and this court concludes that such an explicit finding is not mandated by either the United States or Ohio Constitution." *Id* at 812. The court held that "a parent's constitutional right to custody of his child is sufficiently protected * * * by the *implicit* finding regarding suitability * * *. (Emphasis added.) *Id.*

{¶30} This court in *E.B., supra*, held the father's status as a probation violator was pertinent to the issue of his unsuitability. *Id.* at ¶45. Here, the record demonstrates that mother is a probation violator and is still incarcerated in a detention/treatment facility on the probation violation. Moreover, the Adult Parole Authority recently issued a warrant for father's arrest due to his violation of post-release control.

{¶31} The trial court made the following findings in its judgment entry, which were based on the *undisputed* evidence presented at the hearing:

8

{¶32} R.J.E. has medical issues as a result of [mother's in] utero drug use. * * * The Court finds that [1.] neither of his natural parents [is] able to care for [R.J.E.]. [2.] Both mother and father have a history of drug use and criminal activity. [3.] Mother is currently on probation in Portage County for felony possession of drugs and has had a recent violation of her community control conditions. [4.] Father is on post-release control with the Ohio Adult Parole Authority after serving a prison sentence for a drug offense. [5.] A warrant has been issued for his arrest and he faces other recent charges including felony escape charges.

{¶33} Based on these findings, the court implicitly found that an award of custody to either parent would be detrimental to the child and that both parents were thus unsuitable. As a result, the court did not err in entering its judgment. Appellants' first assignment of error is overruled.

{¶34} For their second assigned error, appellants allege:

{¶35} "The trial court erred as a matter of law and abused its discretion when it did not treat the award of custody like it was meant to be permanent in nature, informed the mother [sic.] that the award of legal custody was "temporary."

{¶36} In making this argument, appellants confuse appellees' motion for change of parental rights and responsibilities (custody) with a termination of parental rights, which are fundamentally different. The differences were explained by the Seventh District in *In re Nice*, 141 Ohio App.3d 445 (7th Dist. 2001), as follows:

{¶37} [L]egal custody *where parental rights are not terminated* is not as drastic a remedy as permanent custody. For instance, appellant retains residual parental rights regarding [her children], which include visitation and the privilege to determine the children's religion. *See* R.C. 2151.011(B)(9) and (10). Also, as the journal entry recites, *appellant has the opportunity to request the return of these two children in the future*. As such, the trial court's standard of review is not clear and convincing evidence, as it is in a permanent custody proceeding, but is merely preponderance of the evidence. (Emphasis added.) *Nice, supra,* at 455.

9

{¶38} When mother asked the court if she had the right to a case plan, the court correctly explained her right to regain custody. The court explained to mother that she had lost the right to take care of R.J.E. by her own actions, but that she could apply to the court to regain custody if in the future she gets her life together and is able to care for the child. The court told her that in this sense its decision would be temporary, unlike a termination of parental rights where the parent loses all of his or her parental rights. The court said it would not be terminating mother's parental rights, but, rather, it would make a determination about custody and give her visitation. Thus, the trial court did not err in explaining the proceedings to mother. Appellants' second assignment of error is overruled.

{¶39} For their third assignment of error, appellants contend:

{¶40} "The trial court erred as a matter of law and abused its discretion when the parties were not given an opportunity to address the Guardian ad Litem's report and the contents of the Guardian Ad Litem's report were used as a factual basis for the court, without testimony as to the contents."

{¶41} Appellants concede the plain error standard applies, apparently because they failed to object to the guardian's report. Appellants argue the trial court committed plain error in considering the guardian ad litem's report as evidence because the guardian did not orally repeat the contents of his report and also because the court "waived the parties' right to cross-examine the GAL."

{¶42} We note that appellants failed to cite any case law holding the guardian is required to orally repeat the contents of his report before it can be considered by the trial court. The Third District, in *In re Sherman*, 3d Dist. Hancock Nos. 05-04-47, 05-04-

10

48, and 05-04-49, 2005-Ohio-5888, succinctly stated the law with regard to when the guardian's report can be considered by the trial court. The court stated:

> **{¶43}** Ordinarily, a GAL's report is not considered evidence, but is merely submitted as additional information for the court's consideration, similar to a pre-sentence investigation report in a criminal proceeding. However, Ohio courts have held that "[a] trial court may consider the report of a court-appointed investigator *without the oral testimony of the investigator* and despite the hearsay inherent in such a report." *Webb* [*v. Lane*, 4th Dist. Athens No. 99CA12, 2000 WL 290383, *3 (Mar. 15, 2000)] * * *. In *Webb*, the Fourth District Court of Appeals specifically held that a GAL report can be considered by the trial court, despite any hearsay contained in the report, so long as the trial court provides protection of the parties' due process rights.

> **{¶44}** In order to protect the parties' due process rights, the trial court must make the guardian ad litem *available for direct and cross-examination. Id.* at *4. "Once the trial court [admits] the guardian's report into evidence, the trial court [is] required to permit [the parties] to cross-examine the guardian." *In re Hoffman*, 5th Dist. Stark No. 2001CA00207, 2001 WL 1913870, *2 (Nov. 28, 2001) * * *. *The guardian need not testify before the report can be considered by the trial court*, but *the guardian must be available for cross-examination* by the parties. *Martin v. Martin,* 9th Dist. Summit No. 20567, 2002 WL 388902, *4 (March 13, 2002). (Emphasis added.) *Sherman, supra*, at ¶29-30.

**{¶45}** Before taking any testimony, the trial court told the parties that in light of their pro-se status, it would allow the witnesses to testify via narrative. The court also explained that if a party had a question for a witness, it was to be given to the court and the court would then direct the question to the witness.

**{¶46}** After the court heard the parties' testimony, Mr. Breiding testified, highlighting certain aspects of his report. Following his testimony, the court told the parties that, while it did not see the need for cross-examination, it would allow them to pose any questions they had for any witness through the court. While some of the parties had questions, *none of them were for the guardian.* Moreover, *appellants did*

11

*not object* to the guardian's report.  Nor did they challenge the foundation of any of the guardian's findings in his report. Thus, *the parties* – not the court – waived their right to cross-examine the guardian.

**{¶47}** In summary, Mr. Breiding testified concerning his report and the court made him available for cross-examination.  Thus, the court did not commit plain error in considering his report.   Appellants' third assigned error is overruled.

**{¶48}** For appellants' fourth and final assignment of error, they allege:

**{¶49}** "The trial court's decision was against the manifest weight of the evidence, an abuse of discretion and contrary to law."

**{¶50}** Appellants argue the court's judgment was not supported by evidence in the record.  Such argument presents a sufficiency, rather than a manifest-weight, challenge.  However, in the interests of justice, we address appellants' sufficiency argument.  In the civil context, a plaintiff sets forth sufficient evidence when he presents some probative evidence that favors his position.  *Premier Therapy, LLC v. Childs*, 7th Dist. Columbiana Nos. 14 CO 0048 and 15 CO 0028, 2016-Ohio-7934, ¶106.

**{¶51}** Appellants argue that four of the court's findings were based on the guardian's report, which, they again argue, was inadmissible in evidence.  However, since we hold the report was properly considered by the court, and the findings that appellants now challenge were based on that report and the witnesses' testimony, the judgment was supported by sufficient evidence.

**{¶52}** First, the court's finding that R.J.E. was born a "drug baby" is supported by the guardian's report of his investigation and also by mother, who testified she was addicted to opiates during the time she was pregnant with her son.  Second, the court's

12

finding that father was on post-release control and that he faced a recent felony escape charge was supported by the guardian's report. Third, the court's finding that R.J.E. has speech issues is supported by the guardian's report and also by the testimony of Mr. and Mrs. Evans and Donna Park. Fourth, the finding that Donna Park (father's mother) is an enabler is supported by the guardian's report. Further, Mrs. Park essentially admitted she has enabled father and this is also evidenced by the fact that, despite her knowledge of father's drug issues, which she said were "obvious," she allowed him to live in their home. *Significantly, appellants did not dispute at the hearing any of these factual findings of the guardian.*

{¶53} Appellants' only manifest-weight argument is that the court's judgment conflicts with mother's recommendation that the Parks be awarded custody. However, Mr. Breiding stated that the Evans have had regular and continued visitation with the child since birth and that they are strongly bonded to him. Moreover, the guardian said that the Parks have three adult children who have struggled with drugs; that the Parks are enablers of father; that this may adversely affect their ability to protect R.J.E. and to put his interests first; that the Evans handle father's drug issues more firmly than the Parks; that the Evans are not enablers; and that the Evans have the most stable home and will give R.J.E. the best chance of long-term success.

{¶54} "When applying the manifest-weight standard of review, the reviewing court reviews the entire record, "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.""" *In*

*re Estate of Eyrich*, 11th Dist. Trumbull No. 2016-T-0002, 2016-Ohio-7165, ¶18, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179, ¶17, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001). "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment]." *In re T.S.*, 9th Dist. Summit Nos. 21740 & 21743, 2004-Ohio-32, ¶6.

{¶55} The court, as the trier of fact, was entitled to determine the credibility of the witnesses. In awarding custody to the Evans, the court obviously found Mr. Breiding to be more credible than mother. In doing so, we cannot say the court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed.

{¶56} In view of the foregoing, the trial court's judgment was supported by competent, credible evidence. Appellants' fourth assigned error is overruled.

{¶57} For the reasons stated in this opinion, the assignments of error lack merit and are overruled. It is the order and judgment of this court that the judgment of the Portage County Court of Common Pleas, Juvenile Division, is affirmed.


TIMOTHY P. CANNON, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in judgment only.