DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Derrick D. ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated his parental rights and placed his minor child in the permanent custody of Summit County Children Services Board ("CSB"). We affirm.
 {¶ 2} Father is the natural father of Z.D., born January 30, 2001. The mother of Z.D. is not a party to this appeal. CSB first became involved with this family in August 2003 due to concerns about Z.D.'s mother's mental health and drug use. Father was not living with the family at that time. Z.D. was adjudicated a dependent child on January 14, 2004.
 {¶ 3} Because Father had not had much involvement in Z.D.'s life, the primary goals for Father on the initial case plan were for him to develop a relationship with Z.D. and provide financial support for her. Due to allegations by the mother, and Father's conviction in April 2003 of domestic violence, CSB suspected that Father had drug and alcohol abuse issues. CSB did not require drug and alcohol testing in the initial case plan because it apparently believed that Father was required to undergo drug and alcohol testing as a condition of his probation for the domestic violence conviction. CSB later discovered that, although Father was required to abstain from drinking alcohol during his probation, no drug or alcohol testing had been required. Consequently, CSB amended the case plan to require Father to undergo a substance abuse assessment and submit to regular drug screening. Father did not undergo a drug and alcohol assessment, however, nor did he submit to regular testing. Over a period of two years, he submitted a total of three urine samples, one of which tested positive for marijuana. During the case plan period, Father was again convicted for committing domestic violence against Z.D.'s mother.
 {¶ 4} On September 23, 2005, CSB moved for permanent custody of Z.D. Each parent also moved for legal custody of Z.D. Following a hearing on all motions, the trial court terminated parental rights and placed Z.D. in the permanent custody of CSB. Father appeals and raises two assignments of error.
 First Assignment of Error
"THE VERDICT GRANTING PERMANENT CUSTODY OF APPELLANT'S [CHILD] TO [CSB] WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE; THE EVIDENCE IS NOT LEGALLY SUFFICIENT TO SUPPORT THE VERDICT."
 {¶ 5} Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C.2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99,1996-Ohio-182. The trial court found that the first prong of the test was satisfied because Z.D. had been in the temporary custody of CSB for at least 12 of the prior 22 months and Father does not contest that finding. Father challenges only the best interest prong of the permanent custody test.
 {¶ 6} When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C.2151.414(D)(1)-(4).[1]
 {¶ 7} Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the relevant enumerated factors. See In re Smith (Jan. 2, 2002), 9th Dist. No. 20711, 2002-Ohio-34; see, also, In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, ¶ 24.
 {¶ 8} The best interest prong of the permanent custody test requires the agency to prove by clear and convincing evidence that permanent custody is in the best interest of the child. Clear and convincing evidence is that which will produce in the trier of fact "`a firm belief or conviction as to the facts sought to be established.'" In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 9} Father attended most of his scheduled weekly visits and interacted appropriately with Z.D., but he would frequently arrive late and miss 30-45 minutes of the two-hour visit. Father's visits never progressed beyond weekly supervised visits because Father had done very little to comply with the requirements of his case plan. Most notably, he had never had a drug and alcohol assessment and continually refused to undergo regular drug and alcohol screening. Although Father insisted that he did not have a substance abuse problem, the mother of Z.D. maintained that he did and CSB had received that information from others as well. Moreover, Father had agreed to comply with these requirements and the court had ordered him to do so.
 {¶ 10} Father submitted urine samples a total of three times over a two-year period, and one of those samples tested positive for marijuana. Father testified that the one positive test result was coincidentally the only time that he had tried marijuana. As CSB witnesses have noted many times in these cases, CSB tends to conclude that a parent is abusing drugs or alcohol when they repeatedly refuse to submit to drug and alcohol screening as required.
 {¶ 11} CSB was also reluctant to allow Father to have unsupervised visits with Z.D. because he was twice convicted of domestic violence against Z.D.'s mother. Father denied that he had any anger management issues, or that he had been physically violent with Z.D.'s mother, despite his two convictions and the fact that he entered a plea of guilty to the second domestic violence charge.
 {¶ 12} Father maintained that he wanted legal custody of Z.D., yet he had never verified to CSB that he had stable housing or employment and he continued to refuse to comply with the requirements of his case plan pertaining to drug and alcohol use. He was uncooperative with the caseworker and the guardian ad litem. For example, he would agree to schedule home visits and other appointments, but then would not be present at the appointed time and place. Father had been given nearly two years, but had done almost nothing to work toward reunification with Z.D.
 {¶ 13} The guardian ad litem testified on behalf of Z.D., who was only five years old at the time of the permanent custody hearing. The guardian ad litem indicated that Z.D. had told him initially that she would like to return to her mother but, after she had lived with the foster family for an extended period, Z.D. told him that she wanted to stay with the foster family. The guardian ad litem opined that permanent custody was in the best interest of Z.D. He emphasized that the parents had been given two years to remedy their parental problems but each had done very little to work toward a goal of reunification with Z.D.
 {¶ 14} Z.D.'s custodial history included a period of more than two years living away from her parents. She had adjusted to living with the foster family and was doing very well in their home. During this lengthy period, as explained above, Father had done very little to work toward improving his ability to parent her.
 {¶ 15} There was also evidence before the court that Z.D. was in need of a legally secure permanent placement and that neither parent was able to care for her at that time. There were no suitable relatives to take legal custody of Z.D., nor was a planned permanent living arrangement an option for this child. Consequently, the trial court concluded that permanent custody and adoption were the only means to provide a legally secure permanent placement for Z.D.
 {¶ 16} Given the evidence before the trial court, it did not lose its way in concluding that permanent custody was in the best interest of Z.D. The first assignment of error is overruled.
 Second Assignment of Error
"THE TRIAL COURT ERRED IN FAILING TO ASCERTAIN THE WISHES OF THE CHILD PRIOR TO A GRANTING OF PERMANENT CUSTODY."
 {¶ 17} Father contends that the trial court erred by rendering a decision on the best interest of Z.D. without first ascertaining her wishes. Father seems to be asserting that the trial court should have conducted an in camera interview of Z.D. Father made no request for an in camera interview prior to or during the permanent custody hearing, however. Father has not asserted that the trial court committed plain error, nor has he explained why this Court should delve into this issue for the first time on appeal.
 {¶ 18} Even if Father had requested an in camera interview of five-year-old Z.D., the trial court is vested with broad discretion in determining whether to speak to the child directly.
"[A] juvenile court has the option of either having the child assert his or her opinion, through, for example, an in-camera interview or testimony, or the court may rely upon the guardian ad litem's representations with respect to the child's desires. Because the juvenile court has a choice, the decision not to conduct an in camera interview will be reversed only if the court abused its discretion in declining to do so." In re Funk, 11th Dist. Nos. 2002-P-0035, 2002-P-0036, 2002-Ohio-4958, at ¶ 30
See, also, In re S.V., 9th Dist. No. 22116, 2004-Ohio-5445, at ¶ 27-28 (holding that trial court did not abuse its discretion in refusing to grant the parent's request for an in camera interview of the child).
 {¶ 19} As indicated above, a guardian ad litem was appointed for Z.D. and spoke on her behalf at the permanent custody hearing. He explained that the child had changed her mind over time and that he believed that permanent custody was in her best interests.
 {¶ 20} Father has failed to establish that the trial court erred by failing to sua sponte conduct an in camera interview of Z.D. prior to finding that permanent custody was in her best interest. The second assignment of error is overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Slaby, P.J., Moore, J., concur.
[1] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case.